FRANCES A. FASSBERGER *v.* M. JOHN SULLIVAN

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NO. 143205

Memorandum filed January 15, 1973

*Pullman, Comley, Bradley & Reeves,* of Bridgeport, for the plaintiff.

*Goldstein & Peck,* of Bridgeport, for the defendant.

FITZGERALD, J. The within action was instituted by writ, summons and complaint dated May 27, 1971. It is one in which the plaintiff is seeking to recover damages of the defendant for an alleged breach of agreement. The plaintiff is the mother of the defendant's former wife, Frances Elizabeth Fassberger Sullivan; thus there was a past relationship between the plaintiff and the defendant of mother-in-law and son-in-law. That relationship between the parties came to an end in a dissolution of the marriage by a decree of a California court in October, 1971.

On May 13, 1956, the defendant in his own handwriting composed and signed a writing which has given rise to this litigation. It reads: "Frances E. and M. John Sullivan acknowledge receipt of $6,000.00 from Mrs. Frances F. [sic] Fassberger. This money is for a home and will be returned by providing a home for Frances F. [sic] Fassberger when she is older." It was signed by the defendant, M. John Sullivan, and dated May 13, 1956. The circumstances surrounding the composition and execution of this writing, hereinafter called exhibit A, will be considered in due course.

The following facts, among others, either are not in dispute or find sufficient support in the evidence as a whole. The defendant and his former wife, both of whom will be referred to as the Sullivans when spoken of collectively, were married in January, 1952, and had four children as issue of their marriage; the eldest son is now in California attending college, and the three younger children presently live with their mother and maternal grandmother,

the plaintiff, in Fairfield, Connecticut. In the early months of 1956, the Sullivans felt that they and their children had outgrown the modest apartment in Stamford where they had been living, and desired to purchase a home. This came to the attention of the plaintiff. The plaintiff turned over $6000 to the Sullivans in three equal instalments of $2000 each to be applied toward this undertaking. Payment was by means of checks drawn on the plaintiff's accounts in New York City banks. The stub from one of these checks, dated April 9, 1956, and in the plaintiff's handwriting, was introduced into evidence at the trial. The stub bears a notation to the effect that the item represented by the stub was one-third of the amount given to the Sullivans to buy a house on Fillow Street, Westport. The entire $6000 in three instalments of $2000 each was given over by the plaintiff to the Sullivans in the early months of 1956 but prior to May 13, 1956. On May 13, 1956, the Sullivans were visiting the plaintiff in the latter's apartment in the Bronx, New York. They were in the kitchen. The plaintiff said, in effect, "What have I got to show that I've given you $6000?" The defendant said, "I'll give you an 'IOU,'" to which the plaintiff replied, "I'd like a place to live." The defendant then composed and signed the writing referred to as exhibit A.

At the time of the execution of exhibit A by the defendant on May 13, 1956, in the kitchen of the plaintiff's Bronx apartment, the plaintiff was then fifty-five years of age and had been a widow since 1954. She was then living in a modest apartment—rental not disclosed—where she continued to live until April, 1967, when she went to live with the Sullivans and their four children at 361 Brooklawn Avenue in Fairfield. The plaintiff had been employed for some time by Phillips Petroleum in New York City in a position from which she retired prior

to April, 1967. She admittedly is a woman of independent means and presently receives a pension from Phillips Petroleum, her former employer, and a pension from the United States post office, her late husband's employer, in addition to receiving social security benefits and dividends from corporate stocks and bonds.

The Sullivans used the money they had received from the plaintiff in 1956 to purchase a home on Fillow Street in Westport, taking title jointly. Later, this property was sold and the proceeds realized went into the purchase of a home in Virginia which in turn was sold and the proceeds put into the purchase of the home at 361 Brooklawn Avenue in Fairfield where Mrs. Sullivan is presently living with three of her four children and the plaintiff. This property is located on the corner of Brooklawn Avenue and Villa Avenue and is in a pleasant residential area known as Brooklawn Park. The house stands in an attractive setting; it is a commodious one and has numerous rooms. Title to this property is in the joint names of the Sullivans and so remains to date.

When the plaintiff took residence in April, 1967, at 361 Brooklawn Avenue in Fairfield, the defendant was then living at home with his wife and children. The plaintiff was given a bedroom of her own with a sun porch off of the bedroom; she shared a bathroom with two of the Sullivans' sons. She was treated as a member of the family and had full use of the premises, taking her meals with the family. When she first took up residence, she offered to pay board to the defendant; the offer was rejected, the defendant saying something to the effect that "You are a guest in my house." On occasion, the plaintiff voluntarily gave some money to Mrs. Sullivan for board.

When the plaintiff took residence at 361 Brooklawn Avenue in April, 1967, she was an active woman. Frequently she would take trips with friends and be away for days or weeks at a time. In December, 1968, the plaintiff fractured a hip as the result of a fall. There followed a substantial period of hospitalization and convalescing in a rest home. In April, 1969, she returned to the Brooklawn Avenue home. The defendant had removed to California where his job had taken him. Mrs. Sullivan and the children remained at the home in Fairfield where they were rejoined by the plaintiff. In December, 1970, the defendant lost his job in California. As a result, he was not able to send Mrs. Sullivan regular remittances. He did, however, send money to Mrs. Sullivan in accordance with his then financial ability. The total amount of payments made by the defendant to or on behalf of Mrs. Sullivan and the household during 1971 amounted to $6184.91.

It was in October, 1971, that a decree of divorce was entered in California between the Sullivans. Under that decree, Mrs. Sullivan was given the right to live at 361 Brooklawn Avenue in Fairfield so long as she and any of the Sullivans' minor children resided there. The youngest of the children is presently six years of age. At the trial, the plaintiff was 72 years of age, with a life expectancy of 13.3 years. The plaintiff continues to reside at the Brooklawn Avenue home with her daughter, Mrs. Sullivan, and three of the Sullivan children. Under the California divorce decree entered in October, 1971, the defendant is paying a monthly stipend of $600 for the support of Mrs. Sullivan and three of the minor children. It would appear that any and all arrearages in temporary support orders in California have been paid by the defendant to his former wife.

So it is that in this action for alleged breach of contract brought by the plaintiff against the defendant on the foregoing narrated facts, the plaintiff is seeking to recover damages of $4272, alleged to have been paid out by her to Mrs. Sullivan in the year 1971 for board for the Sullivan household on Brooklawn Avenue, Fairfield, and for property taxes, utilities, etc., incurred in connection with the property. In addition, the plaintiff by way of other claimed damages is seeking to recover $24,000, discounted to a present value, for the fair and reasonable value of a home alleged to have been contractually provided her by the defendant for the period of her life expectancy of 13.3 years. This is computed on the basis of $150 times 160 months (13.3 years), less a discount for present purposes—from 1971 forward throughout her life expectancy at trial of 13.3 years or 160 months.

It must be remembered that the defendant at no time after the plaintiff began to live at 361 Brooklawn Avenue denied her the right, or privilege, or permission, so to do. Nor does he do so today. After acknowledging receipt of $6000 by the Sullivans from the plaintiff, exhibit A uses the word "home" twice: "This money is for a home and will be returned by providing a home for . . . [the plaintiff] when she is older." The plaintiff contends that the word "home" as used in exhibit A encompasses the word "support" as well as the words "a place to live." In short, it is the plaintiff's position that by signing exhibit A the defendant agreed to provide her with "bed and board" in addition to "a place to live" when she became older, as she did in 1967 and subsequent years to date. Upon the facts narrated at considerable length, the fact that the defendant did provide the plaintiff with both bed and board until 1971 does not, having in mind that it is found that the plaintiff offered to pay board when she first went

to live at 361 Brooklawn Avenue, alter the interpretive effect of the agreement so as to advantage the plaintiff.

There is nothing in the agreement to suggest that the plaintiff and the defendant had a technical or special meaning in mind when using the word "home" twice in that agreement. Under such circumstances, the word must be given its ordinary meaning. *Dorne* v. *Williams,* 140 Conn. 193, 199, and cases cited. The word "home" is defined in the nominative case as "1. a house, apartment, or other shelter that is the usual residence of a person, family or household. 2. the place in which one's domestic affections are centered. 3. an institution for the homeless, sick, etc." As a transitive verb it means "26. to provide with a home." And the synonyms given for "home" all connote a physical location and nothing more: "abode, dwelling, habitation; domicile, residence." Random House Dictionary of the English Language, pp. 678–79 (1966). Another outstanding dictionary defines "home" quite similarly: "1. A village; an estate. *Obs.* 2. One's own dwelling place; the house in which one lives; esp., the house in which one lives with his family . . . . Webster, New International Dictionary (2d Ed.).

It is a fundamental rule in the field of contracts that an agreement "is to be construed according to what may be assumed to have been the understanding and intention of the parties. . . . That intention is to be determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Ginsberg* v. *Mascia,* 149 Conn. 502, 506, and cases cited. "A con-

tract is an agreement between two or more persons to do or not to do a particular thing; and the *obligation* of a contract is found in the terms in which that contract is expressed, and is the duty thus assumed by the contracting parties respectively to perform the stipulations of such contract." *Barlow* v. *Gregory,* 31 Conn. 261, 265.

On examination of the evidence in the light of these well-established rules, it is abundantly clear that it was not intended by the writing of May 13, 1956, that the defendant would provide the plaintiff "support" as well as "a place to live" when she became older. In May, 1956, the plaintiff was financially independent and has remained so up to and including the present time. She was then living in an apartment in the Bronx referred to at the trial as a "fifth-floor walk-up apartment." Obviously, she wished to continue to live there at that time because of her employment in New York City and the fact that she was still in her active fifties. It is equally obvious that the plaintiff desired a more suitable place to live when she became older and had retired from business activities in New York City. It was a home in later life, a place to live, with the companionship of one or more members of her own family—her daughter's—for which the plaintiff bargained and which was accorded by exhibit A. These were the known circumstances surrounding the execution of the agreement, to be construed as the obvious understanding and intention of all parties concerned. Clearly, and overwhelmingly, it was not intended, and cannot be assumed, that the agreement provided for the plaintiff's support as such while she was living in the Sullivan household. That she may have been the recipient of such support, in addition to a place to live, before the financial fortunes of the defendant became affected for the worse in 1971 or thereabouts does

not alter the construction of the agreement. The plaintiff has had a place to live in the Sullivan household at 361 Brooklawn Avenue at all times since she went there to live in 1967, to date.

The fact that the plaintiff may have paid out certain moneys in 1971 which went to the benefit of the Brooklawn Avenue household—moneys claimed to have amounted to $4272—cannot be considered as any breach of agreement by the defendant. What the plaintiff may have paid to Mrs. Sullivan, her daughter, to be used for household needs was not requested of the plaintiff by the defendant. In making any such payments, the plaintiff did so as a volunteer or at the sole request of her daughter, the defendant's former wife. This claim for reimbursement of the plaintiff by the defendant on any theory of breach by the defendant of exhibit A is ingenious to say the least. It finds no support for computation of damages in the law of contracts as applied to the facts of this case. This is because there has been no breach of agreement by the defendant in this respect.

In signing exhibit A on May 13, 1956, the defendant merely agreed to provide the plaintiff with a home—a place to live. The important thing to be held in mind—and the crux of this entire case—is that the door at 361 Brooklawn Avenue in Fairfield has always remained open to the plaintiff—ever since she went there to live in 1967. It still remains open to her, and she is in fact enjoying the shelter of its roof and walls. That is what she contracted for, and that precisely is what she has been and is receiving.

Cases of other jurisdictions cited by the plaintiff as having controlling significance can readily be distinguished on their facts or lack of facts and on the language employed in the writing in question. Hence

the plaintiff's further claim for the assessment of damages for breach of agreement by the defendant as to her support, in addition to a place to live, computed by her to amount to $24,000 less a discount, as already stated, is equally untenable. In the law of contracts, damages cannot be assessed when there has been no breach of the contract or agreement. No such breach has been found on the part of the defendant.

In view of all of the foregoing, the issues in this case are required to be found for the defendant and are so found. Accordingly, judgment must enter for the defendant. It is so ordered.