**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**ONE PARCEL OF REAL PROPERTY,**
**etc., Defendant, Appellee.**

**Appeal of Paul A. LATRAVERSE, Sr.,**
**Claimant, Appellant.**

**No. 88–1817.**

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1989.

Decided April 21, 1989.

John A. Baccari with whom Thomas C. Troy and Troy & Baccari, Wakefield, Mass., were on brief, for claimant, appellant.

Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for the U.S.

Before SELYA, Circuit Judge,
ALDRICH and COFFIN, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This is an appeal by claimant-owner of a multi-dwelling building in Woonsocket, Rhode Island, from a decree of forfeiture pursuant to 21 U.S.C. § 881(a)(7). We affirm.

At 9:30 p.m. on July 1, 1986, Rhode Island police officers executed a search warrant, and, during the search of the building, seized various narcotics paraphernalia and a quantity of cocaine. This proceeding followed. Claimant moved to suppress the seized material, alleging that the police unjustifiably failed to comply with the knock and announce rule governing house searches, and that the warrant was executed at night without good cause. Claimant concedes that this latter argument fails if federal law controls, it still being "daytime" by the federal definition, Fed.R.Crim. P. 41(h), but contends that, because the warrant was executed by state police without any federal participation, state law should control.

■ If the state police were doing what federal officers could not do, claimant would be correct. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The district court, however, determined that, under the teachings of our opinion in *United States v. Aiudi,* 835 F.2d 943 (1st Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), "state-seized evidence is admissible in federal courts if it was obtained in accordance with federal requirements even though it may have been obtained by state officers in violation of state law." 696 F.Supp. 783, 787. In *Aiudi,* we held that a search conducted by state police pursuant to an invalid warrant did not necessitate the suppression of evidence in federal court because a federal agent on the scene had authority to do "legally ... exactly what ... the [state] police did unlawfully." 835 F.2d at 946. Although, here, there was no federal involvement in the search of claimant's apartment, the district court reasoned that *Aiudi*'s underlying principles still applied:

> First, where federal actors could have done lawfully what state actors may have done in violation of local law, there does not seem any reason to believe that the federal actors would encourage state actors to act lawlessly, the very evil proscribed by *Elkins.* Second, while it may be true that excluding such evidence from federal trials may deter state officials from future unlawful conduct, the exclusion of such evidence from state trials on any state offense seems to be a more "close-fitting" deterrent. [*Aiudi,*] 835 F.2d at 946.

696 F.Supp. at 786.

While the present case goes one step further, we think the result reasonable and in accordance with the law of this and other circuits. *See United States v. Jorge,* 865 F.2d 6, 10 n. 2 (1st Cir.1989) (state officers lawfully stopped car, and searched, but not beyond federal bounds; state law does not govern suppression issues in federal criminal trial); *United States v. Pforzheimer,* 826 F.2d 200, 204 (2d Cir.1987) (citing cases from six other circuits). From the federal standpoint the property was fully subject to search at that hour, and this should be enough.

■ Whether the search was conducted in accordance with 18 U.S.C. § 3109 [1] presents a more difficult question. Al-

---

1. § 3109. Breaking doors or windows for entry or exit:
    The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

though the statute speaks in terms of "notice of ... authority and purpose" and refusal of admission, the hearing below concentrated on the latter aspect. Here the court found the facts to be as follows. Claimant's building has a front entrance, and a side entrance near the back. Upon their arrival, the police officers divided into three teams: one team proceeded to the front door, the second to the side door, and the third team distributed itself around the building's perimeter. As the side door team proceeded toward the back of the building, they observed and heard the front door team knocking on the door. The side door team then encountered and detained a man exiting the side door. The side door had been left open by this man, and an officer named Landreville was the first to enter the building. The officer who followed Landreville through the side door into the hallway testified that they could hear knocking, and shouts of "Police," coming from the front door team. Landreville knocked on the back door to claimant's apartment unit, said "Police," and, after waiting five to ten seconds, entered the apartment unit. Inside the unit, the officers found claimant and two others in a bathroom. Narcotics paraphernalia were also found in the bathroom. The officers herded the men together in the kitchen. Shortly thereafter the front door team managed to break through both the building's front door and the unit's front door.

The principal discussion at the hearing related to Landreville's waiting only five to ten seconds after knocking on the apartment side door. *Cf. United States v. DeLutis,* 722 F.2d 902, 909 (1st Cir.1983) (twenty seconds). However, this overlooks the evidence that even before Landreville reached the side entrance he heard the other team banging on the front and shouting "Police," which presumably was being heard in the apartment, and was not being responded to. The side team then had to deal with the individual who exited the side door, and pass through that doorway to the apartment's back door. The court said,

> The fact that the front door knocking continued and remained unanswered even before Landreville knocked on the back door certainly supports the inference that the occupants were not going to be promptly forthcoming.... Landreville's knowledge that the occupants were not responding to the front door knocks contributed to a reasonable belief, formed five to ten seconds after he himself knocked, that an additional wait would be fruitless.

696 F.Supp. at 788. We do not find this unreasonable. The fact that the officers had probable cause to believe that the occupants possessed cocaine, a substance that is easily and quickly removed down a toilet is additional justification for the shorter wait before entry. *Cf. United States v. Tolliver,* 665 F.2d 1005, 1008 (11th Cir.), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982) (compliance with § 3109 excused where availability of cocaine would be jeopardized).

With respect to announcement of purpose, in *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the Court held that the single-word "Police," spoken in a low voice, did not satisfy § 3109's requirements. "The burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirement in this case." *Id.* at 309–10, 78 S.Ct. at 1196. The Court acknowledged, however, that an express announcement would be a useless gesture if the house's occupant already knew the police's purpose. *Id.* The focus, therefore, is properly not on what "magic words" are spoken by the police, but rather on how these words and other actions of the police will be perceived by the occupant. *Cf. Bosley v. United States,* 426 F.2d 1257, 1263 (D.C.Cir.1970) (no announcement or further knocking required where officers believed sleeping occupant unable to hear them). Officers murmuring, "Police," as in *Miller,* may cause the occupant who hears them doubt as to their purpose. No such doubt will exist—although considerable apprehension is likely—when officers pound on the door, yelling "Police!" They want in, presumably to search or arrest, not census-taking. We cannot think it would have made any

difference to claimant's perceptions had the police here, in addition to yelling "Police," shouted "Search Warrant." *See United States v. Manning*, 448 F.2d 992, 1001, 1002 (2d Cir.) (en banc), *cert. denied*, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971) (more detailed explanation than police identification "would not have made the slightest practical difference"); *United States v. Leon*, 487 F.2d 389, 394 (9th Cir. 1973), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974); *cf. United States v. Wysong*, 528 F.2d 345 (9th Cir. 1976) (loudly voiced announcement "Federal Agents, open up" with loud knocking was sufficient notice); *United States v. Wylie*, 462 F.2d 1178, 1188 (D.C.Cir.1972) (shouted announcement "police officer, open up," with knocking was sufficient notice).

It is true that Landreville, at the apartment side door, does not claim to have shouted. However, there was a fracas at the front door, and the occupants, who were reasonably believed to possess cocaine, should have little doubt of the police purpose. We are satisfied that the announcement, under the particular circumstances of this case, gave claimant sufficient notice under § 3109.

*Affirmed.*