**UNITED STATES of America, Appellant,**

v.

**Phillip MOORE, Appellee.**

No. 90–2330.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1991.

Decided Feb. 12, 1992.

Donald L. Schense, Omaha, Neb., argued (Ronald D. Lahners, on brief), for appellant.

James M. Davis, Omaha, Neb., argued, for appellee.

Before MAGILL, BEAM and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

The United States appeals an order of the district court granting appellee Phillip Moore's motion to suppress evidence seized in a search conducted by state law enforcement officers pursuant to a state search warrant. The district court held that the no-knock entry authorized by the warrant violated the knock-and-announce requirements of 18 U.S.C. § 3109. We conclude that this federal statute is inapplicable and that, under Nebraska law and the Fourth Amendment, the evidence is admissible under the good faith standard of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Accordingly, we reverse.

I.

On October 24, 1989, Officer Michael Terrell of the Omaha Police Department applied for a warrant to search Moore's residence. Based upon information supplied by a reliable confidential informant, Terrell's Affidavit and Application stated that Moore had sold controlled substances from his residence within the previous 48 hours and was in possession of "a quantity of marijuana and other suspected narcotics packaged for street sale." Terrell requested a "no-knock" search warrant, averring:

> officers know from past experience that the evidence being sought could easily be destroyed by flushing it down the toilet or sink if officers were required to announce their presence and purpose.

A Nebraska County Court judge issued the requested warrant, expressly authorizing officers executing the warrant to "enter the premises described above without knocking or announcing their authority."

The next morning, Terrell and other officers knocked down the door, entered Moore's residence, and then announced their presence and purpose. The officers detained Moore and, during their subsequent search, found several sets of controlled substances packaged for sale, a handgun, and drug paraphernalia.

The state charged Moore with a drug offense. Before his trial, it was discovered that his residence is within one thousand feet of an elementary school. Federal law calls for twice the maximum punishment otherwise allowed in these circumstances. A federal grand jury then indicted Moore on two counts of possessing a controlled substance with intent to distribute within one thousand feet of an elementary school in violation of 21 U.S.C. §§ 841(a)(1) and 845a (now § 860), and the state charges against him were dismissed.

Before his federal trial, Moore filed a motion to suppress all evidence seized by the state officers. Following an evidentiary hearing, the district court held (i) that the legality of the seizure for purposes of this federal prosecution must be determined "as if the search and seizure had been made by federal officers," citing *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964); (ii) that the evidence must be excluded because the no-knock search warrant violated 18 U.S.C. § 3109 (1988);[1] and (iii) that the

---

1. Originally enacted in 1917, Section 3109 provides:

§ **3109. Breaking doors or windows for entry or exit**

evidence could not be admitted under the good faith exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), because:

> the affidavit is so completely lacking in particularized facts which would provide reasonable or probable cause to waive the knock and announce requirement of 18 U.S.C. § 3109 [that] the officers cannot be said to have had an objective reasonable belief in the sufficiency of the affidavit and the warrant issued therefrom.

The government has appealed the district court's decision, arguing that the evidence seized at Moore's residence is admissible under *Leon*'s good faith exception to the exclusionary rule because the state officers' good faith should be determined under Nebraska rather than federal law.

### II.

■ In *Leon,* the Supreme Court held that the Fourth Amendment's exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922, 104 S.Ct. at 3420. As the district court noted, however, this good faith exception does not apply if the warrant was based upon an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. at 3421. *See also United States v. Sager,* 743 F.2d 1261, 1263 (8th Cir.1984), *cert. denied sub nom., Harmon v. United States,* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985).

In this case, it is undisputed that the Nebraska judge had probable cause to issue the warrant to search Moore's residence. The issue is whether the no-knock entry was lawful. A Nebraska statute expressly authorizes state officers to obtain a no-knock search warrant, as was done here. *See* Neb.Rev.Stat. § 29–411 (1983), quoted *infra* p. 848. Section 3109, which governs

the permissible scope of no-knock searches by federal law enforcement officers, does not authorize no-knock search warrants. The government does not contest the district court's conclusion that the no-knock entry in this case would have violated § 3109 if conducted by federal officers. Thus, the initial question is whether this federal statute was properly applied to exclude evidence seized by state officers acting under a search warrant issued pursuant to state law.

### III.

■ The district court concluded that § 3109 governs the conduct of these Nebraska officials because this is a federal prosecution. We disagree. It is true that, if state officers seize evidence in violation of the Fourth Amendment and turn that evidence over to federal officers (a practice known, when lawful, as the "silver platter"), the evidence must be excluded in a resulting federal prosecution. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The Supreme Court reaffirmed this principle, in the rather sweeping language quoted by the district court, in *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777 (1964):

> The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers.

However, the Supreme Court has only considered this question in the context of evidence seized by state officials in violation of the Fourth Amendment. Likewise, our prior cases applying the *Elkins/Preston* doctrine to exclude evidence seized by state officers from federal prosecutions have involved Fourth Amendment violations. *See United States v. Keene,* 915 F.2d 1164 (8th

---

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authori-ty and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Cir.1990);[2] *United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988); *United States v. Shegog*, 787 F.2d 420, 422 (8th Cir.1986); *United States v. Ross*, 713 F.2d 389, 393 n. 7 (8th Cir.1983).

*Elkins* has also been cited in cases holding that evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because *state* law was violated. *See United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987); *United States v. Eng*, 753 F.2d 683, 686 (8th Cir.1985); *United States v. Montgomery*, 708 F.2d 343, 344 (8th Cir.1983). However, we do not read these decisions to mean that federal law governs all aspects of the admissibility in federal prosecutions of evidence independently acquired by state officers. Rather, they are based upon the proposition that, "states are not free to impose on Federal courts requirements more strict than those of the Federal laws or Constitution." *United States v. Combs*, 672 F.2d 574, 578 (6th Cir.1982).

■ Assuming, then, no violation of the Fourth Amendment (a question we take up in Part V, *infra*), we come to the narrow question at issue here—when state officers, acting totally without federal involvement,[3] seize evidence that is later offered in a federal prosecution, must that evidence be excluded if the no-knock entry violated § 3109, a federal statute that is more restrictive than the Fourth Amendment? We agree with the majority of federal courts that have declined to apply § 3109 in this situation.[4]

■ "[T]he purpose of the exclusionary rule is to deter unlawful police conduct." *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975). This is not a case in which the state officers intentionally violated a federal statute that governed their conduct.[5] Here, § 3109 was irrelevant to Officer Terrell and the County Court judge at the time the warrant issued; they were acting under a state search warrant statute to investigate possible violations of state law. The high social cost of the exclusionary rule—"The criminal is to go free because the constable has blundered," as Justice Cardozo succinctly put it[6]—requires that it have no application to situations where the constable has not blundered. *See Illinois v.*

2. After stating the general rule that "a state search must be reasonable under the fourth amendment in order for evidence to be admissible in a federal prosecution," 915 F.2d at 1167, we went on in *Keene* to find no Fourth Amendment violation because the "no-knock" entry complied with § 3109. *Keene* did not address the issue whether § 3109 could operate to exclude evidence validly seized by state officers under state law *and* the Fourth Amendment.

3. A search conducted with significant involvement of federal officers must comply with federal law. *United States v. McCain*, 677 F.2d 657, 662 (8th Cir.1982). Federal agents may not circumvent more restrictive federal requirements by arranging for state officers to search under state law. However, in this case there was no such federal involvement.

4. *See United States v. Mitchell*, 783 F.2d 971, 973–74 (10th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986); *United States v. Andrus*, 775 F.2d 825, 844 (7th Cir.1985); *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 32 n. 1 (4th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986); *United States v. Jefferson*, 714 F.2d 689, 693 (7th Cir.1983); *United States v. Valenzuela*, 596 F.2d 824, 829–30 (9th Cir.), *cert. denied sub*

*nom., Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. Daoust*, 728 F.Supp. 41, 47 (D.Me.1989), *aff'd*, 916 F.2d 757 (1st Cir.1990).

We think it significant that the cases applying § 3109 to the conduct of state officers have found no violation of the federal statute, so those courts have not had to deal with the exclusionary issue presented here. *See United States v. Singer*, 943 F.2d 758, 761 (7th Cir. 1991); *United States v. Turner*, 926 F.2d 883, 886 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991); *United States v. One Parcel of Real Property*, 873 F.2d 7, 8 (1st Cir.), *cert. denied sub nom., Latraverse v. United States*, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989).

5. *Compare Lee v. Florida*, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968) (intentional violation of the anti-wiretapping provisions of the Federal Communications Act requires exclusion of the resulting evidence, even in a state prosecution).

6. *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585, 587, *cert. denied*, 270 U.S. 657, 46 S.Ct. 353, 70 L.Ed. 784 (1926).

*Krull,* 480 U.S. 340, 347–349, 107 S.Ct. 1160, 1165–1167, 94 L.Ed.2d 364 (1987); *Leon,* 468 U.S. at 918–923, 104 S.Ct. at 3418–3421; *Stone v. Powell,* 428 U.S. 465, 482–496, 96 S.Ct. 3037, 3046–3053, 49 L.Ed.2d 1067 (1976); *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974). "[A]ny rule of evidence that denies the jury access to clearly probative and reliable evidence ... must be carefully limited to the circumstances in which it will pay its way by deterring official lawlessness." *Illinois v. Gates,* 462 U.S. 213, 257–258, 103 S.Ct. 2317, 2342–2343, 76 L.Ed.2d 527 (1983) (Justice White, concurring).

■ Therefore, we conclude that the proper standard in this case is whether the state officials complied with Nebraska law and the Fourth Amendment, or, under *Leon,* had an objectively reasonable basis to believe they were complying with Nebraska law and the Fourth Amendment, in applying for and issuing the no-knock warrant. Our task, then, is to examine the no-knock warrant to search Moore's residence under Nebraska law, the Fourth Amendment, and *Leon.*

## IV.

In Nebraska, no-knock warrants are expressly authorized by statute:

In executing ... a search warrant ... the officer may break open any outer or inner door or window of a dwelling house or other building ... without giving notice of his authority and purpose, if the judge or magistrate issuing a search warrant has inserted a direction therein that the officer executing it shall not be required to give such notice, but the political subdivision from which such officer is elected or appointed shall be liable for all damages to the property in gaining admission. The judge or magistrate may so direct only upon proof under oath, to his satisfaction that the property sought may be easily or quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, if such notice be given....

Neb.Rev.Stat. § 29–411. In *State v. Meyer,* 209 Neb. 757, 311 N.W.2d 520 (1981), the Supreme Court of Nebraska considered a no-knock search warrant issued upon an affidavit which the court described as follows:

A separate sentence and paragraph in the affidavit was as follows: "The cocaine is located in a tupperware container located on the first floor of the residence very close to a toilet area." The affiant recited that it had been his experience that persons who deal in controlled substances keep devices and paraphernalia used in the preparation, sorting, processing, and packaging of the substances; that some drugs may be quickly disposed of or destroyed; and that unless the warrant provided for nighttime entry without notice on this particular night ... the substances may not be present the next day.

311 N.W.2d at 522. The court upheld the warrant and the subsequent no-knock entry. It first held that § 29–411 is valid under the Fourth Amendment as construed in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). It then concluded that the affidavit "was sufficient to establish probable cause, and as such the warrant [permitting] entry without announcement of identity and purpose, was properly authorized." 311 N.W.2d at 524. In reaching this conclusion, the court recited the particularized facts in the affidavit, particularly the suspected location of the drugs in a tupperware container near a toilet, and also stated:

We believe we can take judicial notice of the fact that substances such as cocaine, LSD, and certain forms of prepared marijuana may be easily and quickly disposed of by merely flushing them down a toilet or drain, both of which were located in the residence in the case before us.

■ In this case, Officer Terrell, like the affiant in *Meyer,* relied upon his general experience in averring that a no-knock warrant was needed to prevent destruction of the suspected drugs. Unlike the affiant in *Meyer,* however, Terrell did not present

particular information about the potential for rapid destruction at Moore's residence, other than the fact that the suspected drugs were "packaged for street sale," which does suggest easily disposable quantities. Thus, in accepting this affidavit as adequate cause to authorize a no-knock entry to prevent the destruction of evidence, the County Court judge who issued the warrant was taking the "judicial notice" of inherent destructability that the Supreme Court of Nebraska had taken in *Meyer*.

Although the *Meyer* decision can be read as more fact specific, we conclude that Officer Terrell and the County Court judge acted in "objectively reasonable reliance" upon this decision of the highest court in the state in concluding that a no-knock search warrant could be issued on the basis of Terrell's affidavit without violating § 29–411 or the Fourth Amendment. Indeed, shortly after the issuance of this warrant, the Supreme Court of Nebraska issued *two* decisions expressly reaffirming *Meyer*'s broad "judicial notice" approach to this issue. *See State v. Eary*, 235 Neb. 254, 454 N.W.2d 685, 690 (1990); *State v. Armendariz*, 234 Neb. 170, 449 N.W.2d 555, 558 (1989).[7] Thus, under Nebraska law, the no-knock application and warrant pass muster under *Leon*.

### V.

The remaining question is whether, under *Leon*, the evidence must be excluded because it was seized in obvious violation of the Fourth Amendment. There is no dispute that the reason given for the no-knock entry—possible destruction of the evidence to be seized—is constitutionally adequate. "Officers need not announce their purpose before conducting an otherwise authorized search if such an announcement would provoke ... the destruction of critical evidence." *Katz v. United States*, 389 U.S. 347, 355 n. 16, 88 S.Ct. 507, 513 n. 16, 19 L.Ed.2d 576 (1967). The question is whether "exigent circumstances" are constitutionally required to execute a search warrant without knocking and, if so, whether no-knock entry may be justified by the general experience of police officers regarding the likelihood that knocking will result in the destruction of the drugs being sought.[8]

In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court seemed to adopt an exigent circumstances requirement but was evenly divided on the question whether it can be satisfied by the general experience of law enforcement officers. Four Justices, in the plurality because Justice Harlan considered the Fourth Amendment inapplicable, upheld the unannounced entry in large part because of "the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed," 374 U.S. at 40, 83 S.Ct. at 1633. The four dissenters protested that, "The subjective judgment of the police officers cannot constitutionally be a substitute for ... a necessarily objective inquiry, namely, whether circumstances exist in the *particular* case which allow an unannounced police entry." *Id.* at 63, 83 S.Ct. at 1645 (emphasis in original).

Since *Ker* and *Katz*, the Supreme Court has not clarified whether the Fourth Amendment prohibits no-knock entries based upon a general or blanket judgment that contraband such as drugs will otherwise be destroyed. *See Hall v. Shipley*,

---

7. In the very recent case of *State v. Pierson*, 238 Neb. 872, 472 N.W.2d 898 (1991), which involved the seizure of bulky gambling machines, the Supreme Court of Nebraska suggested that it will now construe § 29–411 more in keeping with the "exigent circumstances" case law under 18 U.S.C. § 3109. Even if *Pierson* signals a modification of the court's blanket approach to drug searches in *Eary* and *Armendariz*, which is questionable, the 1991 decision in *Pierson* does not negate the objective good faith of Officer Terrell and the issuing judge in October 1989.

8. The relevance of the search warrant in this inquiry is problematic. It is clear that covert entry of a private home does not require authorization in a warrant to be reasonable under the Fourth Amendment. *See Dalia v. United States*, 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). But the fact that a no-knock entry has been authorized by a neutral magistrate in a warrant required by statute can hardly be irrelevant to the reasonableness of that entry under the Fourth Amendment. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

932 F.2d 1147, 1152–53 (6th Cir.1991). Numerous state courts have considered the constitutional issue; the decisions are in conflict, with the Supreme Court of Nebraska's judicial notice position being in the minority.[9]

■ The Fourth Amendment's reasonableness inquiry always turns on the facts of a particular case. *See Illinois v. Gates*, 462 U.S. at 230–232, 103 S.Ct. at 2328–2329. As courts have recognized in interpreting § 3109, some situations inherently present "exigent circumstances" of likely escape, danger, or the destruction of contraband. *See United States v. Forker*, 928 F.2d 365, 369 (11th Cir.1991); *United States v. Bonner*, 874 F.2d 822, 826–27 (D.C.Cir.1989). The question is the reasonableness of the generalized statement of cause that is being invoked.

■ It is reasonable for police officers to assume that suspects selling illegal drugs in small quantities from a residence that has normal plumbing facilities will attempt to destroy those drugs if officers knock before a search warrant is executed. Reflecting that obvious reality, during the years when a federal statute authorized no-knock search warrants,[10] this court upheld against Fourth Amendment attack a no-knock warrant issued on the basis of an affidavit that stated:

Affiant also states that it will be necessary to break and enter the premises without announcing his authority until after he has gained admittance since previous raids by the Omaha Police Department have sometimes proven to be fruitless when minimal notice has been given.

*Thomas v. United States*, 501 F.2d 1169, 1173 n. 3 (8th Cir.1974). On the other hand, a blanket rule permitting no-knock search warrants in all drug cases, regardless of whether the forms and quantities suspected to be present can be readily destroyed, is patently unjustifiable and would invite unnecessarily violent and intrusive execution of many search warrants. *Compare State v. Cleveland*, 118 Wis.2d 615, 348 N.W.2d 512, 519–20 (1984).

■ In this case, Officer Terrell's affidavit recited testimony from an informant that Moore had been selling marijuana from his house and that he possessed an unstated quantity of drugs "packaged for street sale." These allegations, along with Terrell's experience that drugs are readily destructible contraband, were the factual bases upon which the judge issued this no-knock warrant. Assuming, as we do, that the Fourth Amendment applies to the reasonableness of a search warrant's execution, this showing of probable cause to enter without knocking was thin indeed.

**9.** *Compare Reynolds v. State*, 46 Ala.App. 77, 238 So.2d 557, 559–60 (Ala.Cr.App.) *cert. denied*, 286 Ala. 740, 238 So.2d 560 (1970); *State v. Mendoza*, 104 Ariz. 395, 454 P.2d 140, 144–45 (1969); *People v. Gastelo*, 67 Cal.2d 586, 63 Cal.Rptr. 10, 12, 432 P.2d 706, 708 (1967); *State v. Anonymous*, 30 Conn.Sup. 197, 308 A.2d 251, 252 (1973); *People v. Ouellette*, 78 Ill.2d 511, 36 Ill.Dec. 666, 669–70, 401 N.E.2d 507, 510–11 (1979); *State v. Dusch*, 259 Ind. 507, 289 N.E.2d 515, 518 (1972); *Commonwealth v. Scalise*, 387 Mass. 413, 439 N.E.2d 818, 823 (1982); *State v. Daniels*, 294 Minn. 323, 200 N.W.2d 403, 410 (1972); *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795, 798 (1968); *State v. Carufel*, 112 R.I. 664, 314 A.2d 144, 147 (1974); *Heaton v. Commonwealth*, 215 Va. 137, 207 S.E.2d 829, 831 (1974); *State v. Hatcher*, 3 Wash.App. 441, 475 P.2d 802, 804–05 (1970); *State v. Cleveland*, 118 Wis.2d 615, 348 N.W.2d 512, 519–20 (1984) (all rejecting a blanket rule), *with People v. Lujan*, 174 Colo. 554, 484 P.2d 1238, 1241 (1971); *Henson v. State*, 236 Md. 518, 204 A.2d 516, 519–20 (1964); *People v. DeLago*, 16 N.Y.2d 289, 266 N.Y.S.2d 353, 356, 213 N.E.2d 659, 661 (1965), *cert. denied*, 383 U.S. 963, 86 S.Ct. 1235, 16 L.Ed.2d 305 (1966); *State v. Meyer*, 209 Neb. 757, 311 N.W.2d 520, 524 (1981); *State v. Loucks*, 209 N.W.2d 772, 777–78 (N.D.1973); *State v. Spisak*, 520 P.2d 561, 562–63 (Utah 1974) (all upholding a blanket rule).

**10.** 21 U.S.C. § 879(b) (1970) (repealed 1974) allowed federal agents to obtain no-knock search warrants

... if the judge or United States magistrate issuing the warrant (1) is satisfied that there is probable cause to believe that (A) the property sought may and, if such notice is given, will be easily and quickly destroyed or disposed of ... and (2) has included in the warrant a direction that the officer executing it shall not be required to give such notice. Any officer acting under such warrant, shall, as soon as is practicable after entering the premises, identify himself and give the reasons and authority for his entrance upon the premises.

Had Officer Terrell included information regarding the quantity of drugs in Moore's house, or other information creating a reasonable fear of destruction (such as the tupperware container by a toilet in *Meyer*), we would be far more confident that this affidavit justified the issuance of a constitutionally reasonable no-knock warrant.

However, the fact that this warrant was arguably issued without adequate cause to justify authorizing no-knock entry does not mean that the evidence must be suppressed. *Leon* teaches that the evidence is admissible unless Terrell's affidavit was so lacking in indicia of probable cause that he could not have reasonably believed in its sufficiency. Terrell applied for the no-knock warrant under § 29–411 as upheld in *Meyer*. He had information that the drugs were in readily disposable form, "packaged for street sale." He stated that, in his experience, drugs can easily be destroyed if officers knock and announce; that statement was not unreasonable, indeed, it has been endorsed by the Supreme Court of Nebraska in three cases and by this court in *Thomas*. There were no Supreme Court or Eighth Circuit precedents that should have warned Terrell that his affidavit was obviously inadequate under the Fourth Amendment. In these circumstances, we conclude that Officer Terrell acted in objectively reasonable reliance on the no-knock warrant in conducting the search of Moore's residence. Accordingly, the motion to suppress should have been denied.

The order of the district court is reversed and the cause is remanded for further proceedings.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. The majority opinion, in my view, misapplies our law on the admissibility of evidence in federal prosecutions and makes a faulty analysis of Nebraska law. In formulating this dissent, I restate the facts in considerable detail in an attempt to present an orderly approach to the issues raised by the parties.

I.

On October 24, 1989, Officer Mike Terrell of the Omaha Police Division's Narcotics Unit learned, through a confidential informant and independent investigation, that controlled substances were being sold by Phillip M. Moore from Moore's residence at 2412 Charles Street, Omaha, Nebraska. The informant told Terrell that he had been at Moore's home and personally witnessed Moore in possession of marijuana and other suspected controlled substances packaged for sale. Later that day, Terrell prepared an affidavit and application for a no-knock search warrant of Moore's home. In his affidavit, Terrell alleged that "officers know from past experience that the evidence being sought could easily be destroyed by flushing it down the toilet or sink if officers were required to announce their presence and purpose." Addendum to Brief of Appellant at 2. Terrell did not otherwise allege any particular reason to fear the destruction of evidence by Moore. *Id.* A Nebraska county judge issued the requested no-knock search warrant pursuant to Nebraska law. *See* Neb.Rev.Stat. § 29–411 (1989).[1]

---

1. Section 29–411 provides:

    **29–411. Warrants and arrests; powers of officer; direction for executing search warrant; damages.** In executing a warrant for the arrest of a person charged with an offense, or a search warrant, or when authorized to make an arrest for a felony without a warrant, the officer may break open any outer or inner door or window of a dwelling house or other building, if, after notice of his office and purpose, he is refused admittance; or without giving notice of his authority and purpose, if the judge or magistrate issuing a search warrant has inserted a direction therein that the officer executing it shall not be required to give such notice, but the political subdivision from which such officer is elected or appointed shall be liable for all damages to the property in gaining admission. The judge or magistrate may so direct only upon proof under oath, to his satisfaction that the property sought may be easily or quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, if such notice be given; but this section is not intended to authorize any officer executing a search warrant to enter any house or building not described in the warrant.

    Neb.Rev.Stat. § 29–411 (1989).

At 7:15 a.m. the next day, Terrell and other officers of the Omaha narcotics unit knocked down Moore's door with a battering ram, entered Moore's home and then announced their presence. The officers found Moore in a bedroom and placed him in handcuffs. During their search, officers found several sets of Ritalin and Talwin, both controlled substances, packaged for sale, a handgun, and drug paraphernalia.

Moore was charged under Nebraska law with possession with intent to deliver controlled substances. After a preliminary hearing in a Nebraska county court on November 29, 1989, Moore was ordered to stand trial. An information was filed on November 30, 1989, and Moore's case was scheduled for trial before a Nebraska judge.

At some point during Moore's state prosecution, it was discovered that Moore's home is located within one thousand feet of an elementary school. Federal law punishes persons selling a controlled substance within one thousand feet of a school with twice the maximum punishment otherwise allowed under federal law, and Moore thereafter was prosecuted under federal law instead of state law. *See* 21 U.S.C. §§ 841(a)(1), 845a. Moore was indicted by a federal grand jury on December 14, 1989, for possessing with the intent to distribute controlled substances within one thousand feet of an elementary school. Moore was arraigned before a United States Magistrate Judge on February 8, 1990, had counsel appointed, and entered a plea of not guilty. The state-court case against Moore was dismissed on February 9, 1990.

Moore filed a motion to suppress all evidence seized at his home by the state officers, which motion was granted by the district court. The court analyzed the validity of the seizure under federal law rather than state law because the evidence was to be admitted in a federal forum. *See* 18 U.S.C. § 3109 (1988).[2] The court then de-

termined that the no-knock search warrant was defective because the supporting affidavit failed to set forth "particular facts ... demonstrating to the magistrate why the evidence in issue is in danger of being destroyed." *United States v. Moore*, No. CR. 89-0-156, Memorandum at 7 (D.Neb. July 6, 1990). The court also determined that the evidence could not be admitted under the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The court reasoned that the state officers could not have had an objectively reasonable belief in the sufficiency of the warrant because it was based on an affidavit "completely lacking in particularized facts which would provide reasonable or probable cause to waive the knock and announce requirement of [section] 3109." *Moore*, Memorandum at 7. The government appeals this decision, arguing that the evidence seized at Moore's home is admissible under the good faith exception to the exclusionary rule, and that the state officers' good faith should be determined under Nebraska law rather than federal law.

## II.

The government's challenge to the district court's order requires resolution of two issues: whether the district court was correct in applying federal law rather than state law to determine admissibility of the evidence in this case, and whether suppressing the evidence was correct under the applicable law. I conclude that federal law governs admissibility of evidence in this case, and that the district court correctly suppressed the evidence.

### A. Applicable Law

The Supreme Court established, in *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), that

---

2. Section 3109 provides:

   **§ 3109. Breaking doors or windows for entry or exit**

   The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

   18 U.S.C. § 3109 (1988).

"[t]he question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (citing *Elkins,* 364 U.S. at 206, 80 S.Ct. at 1437). In determining whether state officers effected an unreasonable seizure, "a federal court must make an independent inquiry.... The test is one of federal law." *Elkins,* 364 U.S. at 223–24, 80 S.Ct. at 1447–48. *See also United States v. Keene,* 915 F.2d 1164, 1167 (8th Cir.1990) ("Because the execution of the warrant was carried out by state authorities in this case, we note that a state search must be reasonable under the fourth amendment in order for evidence to be admissible in a federal prosecution."), *cert. denied,* — U.S. —, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991). The purpose of imposing a federal standard of admissibility in federal proceedings is to prevent admission of evidence in a federal criminal trial that was seized by state agents in violation of the defendant's federal constitutional rights. *Elkins,* 364 U.S. at 222, 80 S.Ct. at 1446.

The government argues that *Elkins* should not apply in Moore's case because the state officers did not intend to circumvent federal law by seizing evidence that federal officers could not constitutionally seize. The government contends that the search warrant was sought by state officers in pursuit of a state prosecution, and that federal involvement was neither planned nor anticipated at the time the evidence was seized, but occurred only after discovering Moore's home was located within one thousand feet of a school. Therefore, the government argues, the risk that evidence seized by state officers in violation of the constitution will be admitted in a federal prosecution is not present in this case and that Nebraska law rather than federal law should govern the validity of the seizure.

The government's argument that state law should govern admissibility in this case is apparently based on the presumption that the seizure would be valid if analyzed under Nebraska law but invalid, or at least arguably so, under federal law. The government asserts that the state officers' good faith should be analyzed under Nebraska statute section 29–411 and *State v. Meyer,* 209 Neb. 757, 311 N.W.2d 520 (1981), instead of United States Code section 3109. According to the government, the seizure would be valid under Nebraska law because it is "well-settled" under *Meyer* that section 29–411, "providing for entry for search pursuant to a warrant which contains a 'no-knock' provision does not offend the Fourth Amendment prohibition against unreasonable search and seizure." Brief of Appellant at 14, 16. Therefore, the government argues, the state officers "acted in accordance with well-settled Nebraska law, thus making [their] reliance on the no-knock authorization objectively reasonable." *Id.* at 16.

The Supreme Court's precedent cannot be distinguished on the basis advanced by the government. Contrary to the government's apparent presumption, state governments and the federal government do not have different standards of reasonableness for searches and seizures under the fourth amendment. The Court in *Elkins* determined that although evidence illegally seized by state officers was once admitted in federal prosecutions based on the theory that the fourth amendment did not apply to state officials, "the Federal Constitution, by virtue of the Fourteenth Amendment, prohibits unreasonable searches and seizures by state officers." *Elkins,* 364 U.S. at 213, 80 S.Ct. at 1442. *See also Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726 (1963) ("the standard of reasonableness is the same under the Fourth and Fourteenth Amendments"); *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961) ("[the fourth amendment] is enforceable against [the states] by the same sanction of exclusion as is used against the Federal Government"). Therefore, a single fourth amendment standard governs the validity of sei-

zures by state and federal officers.[3]

Moreover, I am not convinced that Nebraska law applies a different or lesser standard to evaluate searches and seizures under section 29–411 than that applicable under section 3109. The government relies on *Meyer* to contend that section 29–411 does not offend the fourth amendment prohibition against unreasonable searches and seizures. I do not disagree with such a conclusion. However, *Meyer* did not hold that all no-knock searches under section 29–411 are reasonable under the fourth amendment or that an officer's reliance on a warrant issued under that section is necessarily in good faith. Instead, *Meyer*, relying on federal cases, determined that the no-knock search at issue was consistent with the fourth amendment. The affidavit supporting the no-knock search in *Meyer* alleged that drugs were located very close to the toilet area, and that the drugs may be destroyed if an announcement were required. *Meyer*, 311 N.W.2d at 523–24 (citing *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Ker*, 374 U.S. at 40, 83 S.Ct. at 1633; *Mapp*, 367 U.S. at 643, 81 S.Ct. at 1684). Thus, *Meyer* did not validate all searches under section 29–411, but merely upheld the search at issue based on a particularized affidavit that satisfied the fourth amendment.

Section 29–411 would not, in my view, allow a no-knock search where the federal statute would not. Although section 29–411 defines in the body of the statute when a state no-knock search is permitted and United States Code section 3109 does not contain a similar definition, it is clear that such searches are permitted under both statutes. Both enactments allow no-knock searches upon a showing of "exigent circumstances." *Ker*, 374 U.S. at 47, 83 S.Ct. at 1636 (Brennan, J., concurring in part and dissenting in part); *United States v. Tracy*, 835 F.2d 1267, 1269–70 (8th Cir.), *cert.*

denied, 486 U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988); *State v. Pierson*, 238 Neb. 872, 876, 472 N.W.2d 898 (1991) ("Under [the Nebraska and the federal] statutes, two kinds of search warrants may be executed: 'knock-and-announce' and 'no-knock.' In order to obtain a warrant which may be served without knocking, the magistrate must be provided with information to support the need for entry without announcement."). Thus, the same standard applies to obtain and/or execute a no-knock warrant under both statutes.

### B. Suppression of Evidence

Having resolved that Nebraska law does not impose a lower threshold of reasonableness for searches and seizures, it must now be decided whether the seizure in this case was proper. The Supreme Court in *Leon* held that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" should not generally be excluded. *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420. The exclusionary rule still applies, however, if (1) the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned his or her judicial role and became a rubber stamp for the police; (3) the affidavit is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or (4) the warrant itself is so facially deficient, in failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably believe it to be valid. *United States v. Sager*, 743 F.2d 1261, 1262–63 (8th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985); *see Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21. As earlier stated, the district court in this case found Officer Terrell's affidavit so lacking in indicia of

---

**3.** The government's attempt to distinguish *Elkins* is also contrary to *Leon*, 468 U.S. at 901–02, 926, 104 S.Ct. at 3409–10, 3422; *Preston*, 376 U.S. at 365–66, 84 S.Ct. at 882–83; *Keene*, 915 F.2d at 1166–67; and *United States v. One Parcel of Real Property*, 873 F.2d 7, 8 (1st Cir.), *cert. denied sub nom. Latraverse v. United States*, 493

U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989). In each of these cases, evidence seized by state officers without any involvement of federal officers was sought to be admitted in a federal prosecution. However, these cases did not rely on state law to evaluate the reasonableness of the search and seizure at issue.

need for a no-knock warrant that the officers executing the warrant at Moore's home could not have held an objective good faith belief in the validity of the warrant. I agree.

Because the officers in this case were acting pursuant to a no-knock search warrant, and, in fact, did not knock and announce their presence, the question of whether the officers held a reasonable belief in the need to proceed unannounced must be analyzed in light of the prerequisites for obtaining such a warrant. As I have stated, no-knock warrants under both Nebraska statute section 29–411 and United States Code section 3109 are available only on a showing of exigent circumstances. *See Tracy*, 835 F.2d at 1270; *Pierson*, 238 Neb. at 875–76, 472 N.W.2d 898. Exigent circumstances include reasonable knowledge by the officers that the suspect knows of the officer's intentions to search his home or that the suspect will destroy evidence during a delay in the officer's entry. *Tracy*, 835 F.2d at 1270. Thus, the executing officers in this case must have held an objective good faith belief in the existence of exigent circumstances, *based on the information provided in the supporting affidavit.* The question of whether exigent circumstances exist is a mixed question of law and fact; we must accept the district court's findings on the facts surrounding the execution of the warrant unless they are clearly erroneous, but the determination of whether those facts satisfy the legal test of exigency is subject to de novo review. *United States v. Stewart*, 867 F.2d 581, 584 (10th Cir. 1989).

Officer Terrell's affidavit did not present sufficient indicia of exigent circumstances. The affidavit consisted only of a general allegation that did not relate to the particular premises to be searched, the person to be searched, or the particular circumstances surrounding the search. The affidavit alleged only that "officers know from past experience that the evidence being sought could easily be destroyed by flushing it down the toilet or sink if officers were required to announce their presence." Addendum to Brief of Appellant at 2. This allegation, standing alone, presents virtually no particularized facts respecting the need to enter Moore's home without announcement. I, therefore, agree with the district court's conclusion that "[t]o hold otherwise would mean that *any* time drugs are involved, the executing officers would not have to knock and announce their purpose." *Moore*, Memorandum at 7. *See also Stewart*, 867 F.2d at 585 ("Followed to its logical conclusion, the Government's argument would obviate the necessity for complying with the statute in any search of the residence of an alleged drug dealer.").

Although I agree with the district court that the officers did not hold an objectively reasonable belief in the need for a no-knock entry, I believe that this is a close case and I do not intend to frustrate the legitimate use by law enforcement officers of such search warrants whenever they are reasonably necessary. In evaluating an officer's good faith reliance on a search warrant, we need not find particularized facts that conclusively establish probable cause or exigent circumstances, but only that the affidavit is not so lacking in necessary information, based on *particularized* facts, that a belief in the validity of the warrant is unreasonable. *Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21; *Sager*, 743 F.2d at 1262–63. In this case, the allegation that Moore was in possession of drugs came from a reliable informant and the drugs in Moore's possession were packaged for sale and thus may have been small enough to flush down a toilet or rinse down a sink. However, because the affidavit in this case did not present particularized facts to provide a reasonable belief in the need to enter Moore's home without knocking, I would affirm the district court.

### III.

I conclude that the search and seizure in this case was unreasonable. The evidence seized in Moore's home is not admissible under the good faith exception to the exclusionary rule. The order of the district court granting Moore's motion to suppress should be affirmed.