STATE OF NEBRASKA, APPELLEE, V.
MICHAEL L. MEYER, ALSO KNOWN AS MIKE MEYER,
AND KAREN M. MEYER, ALSO KNOWN AS
KIRBY MEYER, APPELLANTS.

311 N.W.2d 520

Filed October 23, 1981. Nos. 43898, 43899.

Dennis D. Burchard for appellants.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendants, Michael L. Meyer and Karen M. Meyer, husband and wife, were charged in three counts as follows: (1) Possession of cocaine with intent to deliver, (2) possession of lysergic acid diethylamide,

otherwise known as LSD, and (3) possession of marijuana with intent to manufacture and deliver; all contrary to the provisions of Neb. Rev. Stat. § 28-416 (1)(a) and (3) (Cum. Supp. 1980). A jury trial was waived. In the trial before the court both defendants were found guilty. Each was sentenced to concurrent terms on each count of 1 to 2 years, Michael to be imprisoned in the Nebraska Penal and Correctional Complex and Karen in the Nebraska Center for Women.

On appeal to this court the defendants have assigned and argued the following alleged errors: (1) The trial judge erred in denying their respective motions to suppress various items of evidence seized in the search of their residence pursuant to a "no-knock" search warrant; and (2) In imposing sentence the trial judge erred in considering the recommendations and contents of letters from the probation officer dated October 10, 1980, without, it is claimed, making the contents known to defendants' counsel.

The contentions of the defendants with reference to the search and seizure issue are: (1) That with certain exceptions, the unannounced entry of police officers into a private residence, with or without a warrant, is a violation of the prohibition against unreasonable searches and seizures contained in the fourth amendment to the Constitution of the United States; and (2) The affidavit presented to the magistrate and upon which the warrant was based is insufficient to establish probable cause. In support of their contentions, the defendants rely principally upon *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), and *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), respectively.

Neb. Rev. Stat. § 29-411 (Reissue 1979) provides, insofar as relevent to the issues in evidence in this case: "In executing . . . a search warrant . . . the officer may break open any . . . door . . . of a dwelling . . . if, after notice of his office and purpose, he is refused

admittance; *or without giving notice of his authority and purpose, if the judge or magistrate issuing a search warrant has inserted a direction therein that the officer executing it shall not be required to give such notice . . . . The judge or magistrate may so direct only upon proof under oath, to his satisfaction that the property sought may be easily or quickly destroyed or disposed of . . . if such notice be given . . . .*" (Emphasis supplied.)

In the case before us, the warrant contained the above statutory "no-knock" direction and was issued upon an affidavit which we summarize as follows. The affiant, a Nebraska State Patrol drug investigator, stated that he had been involved in numerous investigations involving controlled substance activities and had general familiarity with the slang terms for the various controlled substances; that on October 1, 1979, he interviewed a confidential informant whose information had proven reliable in the past and as a result of which previous arrests and convictions for controlled substance violations had been made; and that the affiant believed the informant was reliable in the present instance. Based upon his own personal observation in the defendants' residence, the informant told the affiant that Mike Meyer had in his possession in said residence within the past 10 days quantities of "coke," "hash," and "pot." In the drug vernacular these terms refer to cocaine, concentrated marijuana, and marijuana. The affiant had overheard a conversation relating to the sale of controlled substances at the residence of the defendants and had made a personal surveillance of the outside of the residence. A separate sentence and paragraph in the affidavit was as follows: "The cocaine is located in a tupperware container located on the first floor of the residence very close to a toilet area." The affiant recited that it had been his experience that persons who deal in controlled substances keep devices and paraphernalia used in the preparation, sorting, processing, and packaging of the substances; that some drugs may be

quickly disposed of or destroyed; and that unless the warrant provided for nighttime entry without notice on this particular night, the first of October, the substances may not be present the next day.

On the night of October 1, following surveillance of the premises and observing lights on in the house and a man present in the house sitting near a window upon which the drapes were not tightly drawn, the police made a forcible entry into the residence without notice.

The ensuing search resulted in the seizure of cocaine, processed and growing marijuana, and LSD, as well as various items of drug paraphernalia. Also found were a variety of other drugs, some of which, but not all, were controlled substances.

The first question with which we are confronted is whether the holding of the Supreme Court of the United States in *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), nullifies the provision of § 29-411 pertaining to unannounced entries with warrant. We conclude it does not. *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963), countenances the procedure authorized in the portion of the statute which we have quoted.

*Payton* involved the unannounced entry into a residence without a warrant to make, what the court referred to as, a routine felony arrest; in other words, an arrest upon probable cause but without warrant and absent any exigent circumstances. In *Payton*, the person to be arrested was charged with homicide and was absent from the residence at the time the entry was made. As a result of the entry, the firearm which had been used in the homicide was seized. The court held that a motion to suppress the use of the firearm as evidence should have been sustained. It further held that absent exigent circumstances the residence may not be entered without a warrant and that a warrant founded on probable cause carries with it limited authority to enter a building when there is reason to

believe the suspect is within the structure. In *Payton*, no question concerning the necessity of announcing identity and purpose before entry was involved.

*Ker v. California, supra,* involved the following facts. Officers, in the course of a controlled substances investigation, observed what appeared to be a drug transaction between the defendant and another. They followed the defendant to his apparent residence and, with the aid of a passkey obtained from the landlord, made an unannounced entry for the purpose of preventing the destruction of evidence.

The Court, in its discussion in the above opinion, recognized that in general the validity of an arrest, absent constitutional restriction, is controlled by state law. In discussing the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), it said in *Ker* at 31: "Mapp, however, established no assumption by this Court of supervisory authority over state courts, cf. *Cleary v. Bolger*, 371 U.S. 392, 401 (1963), and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law." The Court held the search was justified as incident to a valid arrest on probable cause and there was probable cause (we have not recited all the pertinent evidence) to believe a felony offense had been or was being committed on the premises. The evidence established the information came from a reliable informant. The Court assumed the entry by key was equivalent to a breaking. It expressly approved the opinion of the California Supreme Court in *People v. Maddox*, 46 Cal. 2d 301, 306, 294 P.2d 6, 9 (1956), which said: "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844." Section 844 permitted officers to make forced entry after identifying themselves and announcing their purpose.

The U.S. Supreme Court said in *Ker* at 40: "Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police." The summary appearing in the reporter preceding the opinion says in part at 23: "The States are not precluded from developing working rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement,' provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain."

The defendants also cite *Sabbath v. United States*, 391 U.S. 585, 88 S. Ct. 1755, 20 L. Ed. 2d 828 (1968). That case did not involve a determination of the reasonableness of an entry and search under constitutional provisions. It involved only the requirements of the federal statute requiring "notice of authority and purpose" and whether the search and arrest were valid under the statute. The Court, in its opinion, pointed out that the statute codified the common law, and held that since the requirements of the statute had been violated, the arrest and search were invalid. No warrant was involved in this case. The holding in *Sabbath* has no application to the facts before us.

Supporting the view we take here, in addition to *People v. Maddox, supra*, is *State v. Young*, 76 Wash. 2d 212, 455 P. 2d 595 (1969).

We believe we can take judicial notice of the fact that substances such as cocaine, LSD, and certain forms of prepared marijuana may be easily and quickly disposed of by merely flushing them down a toilet or drain, both of which were located in the residence in the case before us. *People v. De Lago*, 16 N.Y.2d

289, 213 N.E.2d 659, 266 N.Y.S.2d 353 (1965).

The second question related to the validity of the search warrant is whether or not the affidavit submitted to the magistrate upon which the search warrant was issued is sufficient to satisfy the constitutional requirement of probable cause. In *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), the Supreme Court of the United States said: "Although an affidavit supporting a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances relied on by the person providing the information and some of the underlying circumstances from which the affiant concluded that the informant, whose identity was not disclosed, was creditable or his information reliable." (Syllabus of the court.) In applying the above test, we have said: "An affidavit for a search warrant is not defective simply because it is based on hearsay, so long as the affidavit discloses a substantial basis for crediting the hearsay. Firsthand knowledge of an informant, acquired by sight or hearing, is self-corroborating and tends to fulfill both aspects of the Aguilar test." *State v. Howard*, 188 Neb. 494, 197 N.W.2d 641 (1972) (syllabi of the court).

In the present case the affidavit contains the information that the affiant was acquainted with the informant; that the informant had previously provided useful and reliable information and that arrests and convictions had resulted from that information. Furthermore, it appears from the affidavit that the information as to the presence of controlled substances in the residence was obtained by the informant's personal observation while in the residence in the recent past. The affidavit contains details of the facts observed, to wit, the nature of the controlled substances, the nature of the containers in which one of the substances was located, and the location thereof, includ-

ing the fact that it was located near a toilet. The defendants urge that the sentence of the affidavit we have quoted earlier in this opinion does not specifically show the source of the information as to the location of the Tupperware container holding cocaine. Even without that specific information the affidavit is sufficient. However, the affidavit must be read in a commonsense and realistic fashion. Taking the affidavit as a whole, it is clearly inferable that the information contained in the particular sentence was based upon the personal observation of the informant. Affidavits for warrants must be tested in a commonsense, realistic fashion. *State v. Glouser*, 193 Neb. 190, 226 N.W.2d 328 (1975). We hold the affidavit was sufficient to establish probable cause, and as such the warrant in the form in which it was issued, entry without announcement of identity and purpose, was properly authorized.

The defendants argue that the trial court, in imposing sentence, erred in considering the contents and recommendations of the probation officer made in separate letters, dated October 10, 1980, addressed to the court pertaining to each of the defendants. The defendants' counsel asserts the letters were not part of the presentence investigation and were not shown to counsel before sentencing on October 24, 1980. Counsel alleges in his brief that the letters contained false information which would have been rebutted had he known the contents. However, he does not identify the false information. The pertinent letters are before us and came to us in the envelope in which the presentence investigation report was transmitted. Also included are a number of letters of character reference submitted by the defendants at the time of sentencing. We have no reason to doubt counsel's assertion that he did not see the letters; however, that fact does not appear in the record. Neither do we have any reason to believe that the court concealed the letters from counsel.

However, we have examined the letters and they contain few factual references. Those few factual references made are also found in various parts of the presentence investigation which counsel admittedly examined. One example of such a reference is the fact that controlled substances other than those which relate to the charges filed were found in the residence. This fact appears in the presentence investigation. The remaining portions of the letters are largely conclusions and recommendations. The same conclusions and recommendations could be reached by the sentencing judge based upon the information in the presentence investigation. Even if the defendants or their counsel did not see the letters, no prejudicial error resulted. "The law is well established in this state that in considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant. 'A sentencing judge has broad discretion as to the source and type of evidence or information which may be used as assistance in determining the kind and extent of the punishment to be imposed and the judge may consider *probation officer reports*, police reports, affidavits, and other information, including his own personal observations.'" *State v. Stranghoener*, 208 Neb. 598, 603, 304 N.W.2d 679, 682 (1981).

AFFIRMED.