Joanna HALL, Plaintiff,

v.

Ron LOPEZ, in his individual capacity, John Borini, in his individual capacity, Salvatore Fiorillo, in his individual capacity, Ron Gibson, in his individual capacity, Dan Shull, in his individual capacity, and Lorne Kramer, in his official capacity as Police Chief for the City of Colorado Springs, Defendants.

Civ. A. No. 92–F–2433.

United States District Court,
D. Colorado.

May 3, 1993.

Dennis W. Hartley, Dennis W. Hartley, P.C. and Craig M. Cornish, Cornish & Dell'Olio, Colorado Springs, CO, for plaintiff.

James G. Colvin II, City Atty. and Thomas J. Marrese, Sr. Litigation Atty., City of Colorado Springs, Colorado Springs, CO, for defendants.

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving allegations of excessive use of police force and violations of Plaintiffs' constitutional rights. This matter comes before the Court on Defendants' motion to dismiss or for summary judgment. Both parties submitted voluminous materials outside their pleadings; pursuant to Fed. R.Civ.P. 12(c), the motion will be treated as one for summary judgment. Jurisdiction is based on 28 U.S.C.A. § 1331. The litigants have fully briefed the matter. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### I. Background

On December 20, 1991, at 8:30 p.m., Defendant Detective Fiorillo, an undercover officer, arranged to purchase one pound of marijuana from Clark Whitney.[1] Plaintiff, Joanna Hall, alleges Whitney got the marijuana from one David Glab; Defendants assert Whitney (whom Defendants merely refer to as "an individual") had obtained the marijuana from a man named Dennis Murphy. Detective Fiorillo was apparently told by a fellow detective that the marijuana originated from 2025 Salt Drive at about 8:00 p.m. Mr. Murphy, along with Hall, resided at 2025 Salt Drive, Colorado Springs, Colorado.

Later that night, Detective Fiorillo, who had six years of experience as a police officer and two years in the Vice/Narcotics Unit, applied for and obtained a no-knock search warrant for 2025 Salt Drive. Detective Fior-

---

1. All factual recitations in this Order have been alleged in the litigants' pleadings.

illo apparently prepared an application for a no-knock warrant for Mr. Glab's residence, but did not complete the application process. In the affidavit, Detective Fiorillo stated that, based on his experience with drug dealers, he knew them to protect themselves and their narcotics from police and rival drug dealers by arming themselves with dangerous weapons, including revolvers, rifles, shotguns, and knives. The detective stated Mr. Murphy was known to have six pounds of marijuana in his possession, but that it could be rapidly disposed of. In the interests of officer safety and preserving evidence, Detective Murphy therefore requested a no-knock search warrant.

The warrant was later approved by Defendant Captain Dan Shull. At 11:30 p.m. El Paso County District Court Judge David Parrish reviewed the application and the officer's affidavit and issued the no-knock search warrant. Shortly after midnight, members of the Tactical Enforcement Unit (TEU), including Officers Gibson, Lopez, and Borini, broke down Hall's door with a 35-pound, one-man battering ram and entered her residence.

Hall and Mr. Murphy were sleeping at the time. Due to her fear of a violent ex-boyfriend, Hall kept a loaded 9mm pistol on the headboard of her bed. When she heard the commotion of the TEU's entrance, she thought her ex-boyfriend had broken in. She sat up in bed and was shot in the back with a 9mm bullet which entered the right side of her back and exited the right side of her chest. She stated in an affidavit that after she was shot, she became afraid her ex-boyfriend would go to her son's bedroom; she picked up her own gun from the headboard in order to arm herself. When she heard the intruders identify themselves as police, she dropped her weapon. Hall does not allege that Chief Kramer was involved in either applying for or executing the search warrant.

The search of Hall and Murphy's home turned up no marijuana, but outside the house, in a freezer within Hall and Murphy's detached garage, police found 7,318 grams of marijuana and packaging material.

Hall brought this action under 42 U.S.C.A. § 1983 (West Supp.1992) alleging a violation of her Fourth and Fourteenth Amendment rights under the U.S. Constitution and Article II, Section 12 (No Imprisonment for Debt) and 25 (Due Process of Law) of the Colorado Constitution. Specifically, Hall lists four causes of action: (1) unlawful entry by all Defendants in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution as well as Article II, §§ 12 and 25 of the Colorado Constitution; (2) unreasonable and excessive use of force by Officers Lopez and Borini in violation of the same constitutional provisions; (3) deliberate indifference on the part of the City, Chief of Police Kramer, and the police department; and (4) three state claims of false imprisonment, battery, and outrageous conduct against all Defendants.

All Defendants moved for summary judgment on Plaintiffs' first cause of action, Kramer moved for summary judgment on Plaintiffs' third cause of action, and Kramer, Shull, Fiorillo, and Gibson moved for summary judgment on Plaintiffs' fourth cause of action.

## II. Summary Judgment Standard

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States,* 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 631 (D.Colo.1990).

In reviewing a motion for summary judgment, the court must view the evidence in the

light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1155 (D.Colo.1990). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

### III. Plaintiffs' First Cause of Action: Unlawful Search

#### A. Governing Law

Defendants have moved for summary judgment on Plaintiffs' first cause of action regarding their illegal search on grounds of both qualified immunity and certain Defendants' lack of participation in the application for and execution of the search warrant. We examine the issues under federal rather than state statutory and constitutional standards. *Ker v. California,* 374 U.S. 23, 39, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726 (1963); *United States v. Mitchell,* 783 F.2d 971, 973–74 (10th Cir.), *cert. denied,* 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986).

There is some question whether state officers using a state warrant to investigate violations of state crimes should be judged by Fourth Amendment standards or the "knock and announce" requirement embodied in federal statute, 18 U.S.C. § 3109. The courts disagree about whether there is even a difference. Some courts have appeared to find that section 3109 and the Fourth Amendment are co-extensive, noting "the rule incorporated by Section 3109 is merely expressive of the common law rule," *King v. Marmon,* 793 F.Supp. 1030, 1033 (D.Kan.1992); *see also Simons v. Montgomery County Police Officers,* 762 F.2d 30, 33 (4th Cir.1985), or is "grounded in the Fourth Amendment." *United States v. Ruminer,* 786 F.2d 381, 383 (10th Cir.1986). Others have declined to impose a knock and announce requirement on the Fourth Amendment. *United States v. Sagaribay,* 982 F.2d 906, 910 (5th Cir.1993); *United States v. Nolan,* 718 F.2d 589, 602 (3rd Cir.1983); *United States v. Daoust,* 728 F.Supp. 41, 49–50 (D.Me.1989). The courts would seem to be in more agreement that a failure to knock and announce, depending on the circumstances, could violate the more general Fourth Amendment reasonableness requirement. *See, e.g., United States v. Mitchell,* 783 F.2d 971, 974 (10th Cir.), *cert. denied,* 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986); *Nolan,* 718 F.2d at 601. In the end, we read the cases as allowing both section 3109 and the Fourth Amend-

ment one key commonality: shared exceptions to the rule based on exigent circumstances. In any event, section 3109 carries no independent force in this matter because the no-knock search was conducted entirely by state law officials. *See Ker,* 374 U.S. at 39, 83 S.Ct. at 1632; *U.S. v. Moore,* 956 F.2d 843, 847 (8th Cir.1992).

**B. Claims Against Officers Gibson, Lopez, and Borini**

■ Defendants state that neither Officers Gibson, Lopez, nor Borini participated in the application for the no-knock search warrant and are therefore entitled to good faith qualified immunity in relying on the warrant applied for by Detective Fiorillo. Prior to executing the search warrant, Officer Gibson reviewed the face of the warrant but did not review the application or affidavit.

### 1. *Qualified Immunity: Search Warrant Applicants*

In order to award qualified immunity to a police officer who applied for a search warrant, the Court must determine "whether a reasonably well-trained police officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). In deciding whether the officer should have known his affidavit failed to establish probable cause, we also make an "objective reasonableness" assessment of whether "a reasonable person would have known that his conduct 'violates clearly established statutory or constitutional rights.'" *Salmon v. Schwarz,* 948 F.2d 1131, 1135 (10th Cir. 1991) (quoting *Burns v. Reed,* —— U.S. ——, ——, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991) (other citation omitted)). We look not only to currently applicable law, but also to whether that law was clearly established at the time the alleged violation occurred. *Siegert v. Gilley,* —— U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

### 2. *Qualified Immunity: Executors of Search Warrants*

■ However, when we examine the reasonableness of an officer's actions when the officer executes a search warrant secured by another officer, the standard becomes one of good faith. An officer without knowledge of the facts underlying the search warrant is entitled, when executing the warrant, to rely on its validity. *Salmon,* 948 F.2d at 1141; *Morris v. County of Tehama,* 795 F.2d 791, 795 (9th Cir.1986). So long as the officer reasonably believed his actions to be lawful, he is protected by qualified immunity. *Salmon,* 948 F.2d at 1141.

While Plaintiffs correctly note that no similar qualified immunity was granted the officers in *U.S. v. Stewart,* 867 F.2d 581 (10th Cir.1989) (negating qualified immunity for officers who battered down door and subjected residents to stun grenade in order to conduct search), the facts in *Stewart* are distinguishable in two crucial aspects. First, in *Stewart,* the officers executing the search warrant were aware of the facts underlying the search warrant; they could not claim under the fellow officer rule to be merely good faith executors of a presumptively valid warrant. Second, the search warrant in *Stewart* was not a "no-knock" search warrant but an ordinary warrant specifying no particular means of entry. Therefore, the officers could not claim reliance on a no-knock warrant's implicit validation of exigent circumstances to justify their explosive and intrusive no-knock entry.[2]

Here, Officers Gibson, Lopez, and Borini were not involved in procuring the no-knock

---

**2.** *Malley,* also relied on by Plaintiffs, is similarly distinguishable in significant aspects. In *Malley,* 475 U.S. 335, 106 S.Ct. 1092, the officer who executed the search warrant was also the officer who applied for it. He was aware of the facts underlying the warrant and could not claim reliance on its valid procurement by another. The Supreme Court therefore was not called upon to address the fellow officer rule.

Plaintiff also attempts to distinguish *Salmon* on the basis that the arresting officer there was

given immunity only because he had not known of the material omissions in the warrant application of his fellow officer. Plaintiffs have given us no reason to believe *Salmon* does not apply to the instant case, where there are no allegations of bad faith. That is, there are no allegations that Officers Gibson, Lopez, or Borini had knowledge of the no-knock warrant's unconstitutional defects.

search warrant. In the absence of evidence suggesting a lack of good faith on their part, they are entitled to rely on the validity of a recently issued no-knock warrant and its implicit representation that exigent circumstances prevailed. Police work would not be feasible if officers were required to investigate the background of every search warrant, arrest warrant, or request for backup that derived from another officer. If officers were not allowed to rely on the products of warrant applicants and magistrates, warrant applicants would be compelled to, in effect, 'apply' to every member of the force involved in an undertaking, submitting to the other officers for their approval the same information submitted to a magistrate. *See, e.g., Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (holding that police officers called to aid in execution of arrest warrants are entitled to assume validity of probable cause); *Morris,* 795 F.2d at 795 (holding that for section 1983 immunity, officer is entitled to assume validity of search warrant secured by fellow officer); *Zawacki v. City of Colorado Springs,* 759 F.Supp. 655, 661 (D.Colo.1991) (same).

■ However, police officials who made a practice of assigning to different officers the tasks of warrant applications and warrant executions in order to insulate all searches and seizures would not likely be found to have acted in good faith. Executing officers' good faith reliance must also be qualified by the relative staleness of the exigent circumstances. The validity and appropriateness of reliance on day-old exigent circumstances, for example, is likely to be minimal. *See Stewart,* 867 F.2d at 585.

Officers Gibson, Lopez, and Borini will be granted qualified immunity.

## B. Claims Against Detective Fiorillo and Captain Shull

■ Both Detective Fiorillo and Captain Shull were involved in the preparation of the search warrant application. Detective Fiorillo prepared the application and Captain Shull reviewed it. Defendants claim they are nevertheless entitled to qualified immunity because they reasonably believed the application's representations of drugs and the possible presence of weapons made out probable cause. Defendants claim their belief was not unreasonable because the case law so conflicts on the issue of whether generalized, conclusory statements in a no-knock search warrant constitute probable cause.

■ In contesting Defendants' claim of qualified immunity, Plaintiff has the burden of identifying (1) the "clearly established law that the government official is alleged to have violated" and (2) "the conduct that violated the law." *Coen v. Runner,* 854 F.2d 374, 377 (10th Cir.1988). If Plaintiff satisfies her burden, the defendant assumes the usual burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat his or her claim of qualified immunity. *Dixon v. Richer,* 922 F.2d 1456 (10th Cir.1991).

### 1. The Federal Standard

■ We note initially that if the officers' beliefs are to be held to be objectively reasonable, those beliefs must be based on the affidavit's assertion that Plaintiffs had six pounds of easily disposable drugs in the house; the conclusory statements about the possible presence of weapons cannot justify an exception under the knock and announce requirement. *See Stewart,* 867 F.2d at 584–85 (holding insufficient blanket statement that "controlled substances traffickers do commonly possess and carry a firearm" when prior to search officers had no reason to believe there was a gun in house, had little information about defendant or his house, and had no reason to think the house was barricaded); *United States v. Nabors,* 901 F.2d 1351, 1354–55 (6th Cir.1990) (holding reasonable belief in presence of firearms insufficient to justify split-second announcement followed by forced entry). The Court of Appeals noted in *Stewart* that general, conclusory statements about weapons in the house were "purely conjectural" because they "consisted of generalities that bore no relation to the particular premises being searched or the particular circumstances surrounding the affidavit." *Id.* at 584. Reliance on such statements, taken to its logical conclusion, "would obviate the necessity for com-

plying with the statute in any search of the residence of an alleged drug dealer." *Id.* at 585. The officers must therefore rely solely on their belief that narcotics were in the house.

■ In order to satisfy the Fourth Amendment's reasonableness standard, police officers executing a warrant must generally announce their authority and purpose before entering a dwelling. *Mitchell,* 783 F.2d at 974. Exigent circumstances may constitute an exception to this requirement. *Id.* In support of Defendants' allegedly reasonable belief that narcotics in the house constituted exigent circumstances, Defendants cite *United States v. Moore,* 956 F.2d 843 (8th Cir.1992) (upholding the validity of a search warrant based on an affidavit which stated the defendant had sold narcotics from his residence in the previous 48 hours and was in possession of "a quantity of marijuana and other suspected narcotics packaged for street sale"), which relied on the Nebraska Supreme Court opinion in *State v. Meyer,* 209 Neb. 757, 311 N.W.2d 520 (1981) (upholding a no-knock warrant based on an officer's general experience that a no-knock warrant was needed to prevent destruction of suspected illegal drugs), and *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). There are, however, several factors in these cases which must limit their application in the instant matter.

First, *Moore* had not yet been decided when the defendants in the instant case conducted their search and was thus not available to them. Second, the *Moore* Court noted the defendants in that case had no warning under Supreme Court or Eighth Circuit precedent that their affidavit was obviously inadequate under the Fourth Amendment. 956 F.2d at 851. On the other hand, the Tenth Circuit's opinion in *Stewart* provides just such a cautionary statement against conjectural, conclusory statements that seek to evade statutory or constitutional standards whenever drugs are thought to be present. 867 F.2d at 585.

Third, even in *Moore* the Court of Appeals stressed that the narcotics could have been reasonably believed to be easily disposable because they were "packaged for street sale." *Id.* at 849. While the Court found the officer had acted in "objectively reasonable reliance" on the prior state supreme court decision in *Meyer,* it noted the *Meyer* Court had expressly taken notice only that "substances such cocaine, LSD, and certain forms of *prepared marijuana* may be easily and quickly disposed of merely by flushing them down a toilet or drain." *Meyer,* 311 N.W.2d at 524, *quoted by Moore,* 956 F.2d at 848 (emphasis added). In *Meyer,* in fact, the affidavit to the search warrant application had stated the narcotics were "located in a tupperware container located on the first floor of the residence very close to a toilet area." *Meyer,* 311 N.W.2d at 522, *quoted by Moore,* 956 F.2d at 848. Fourth, as acknowledged by *Moore,* 956 F.2d at 850 n. 9, the *Meyer* Court's judicial notice position is in the minority; most courts, including *Moore,* have rejected a blanket rule. *Id.* (noting that "a blanket rule permitting no-knock search warrants in all drug cases, *regardless of whether the forms and quantities suspected to be present can be readily destroyed,* is patently unjustifiable and would invite unnecessarily violent and intrusive execution of many search warrants") (emphasis added).

Finally, in *Ker,* the Supreme Court likewise upheld the officers' no-knock entry where the exigent circumstances consisted of the officers' belief that Ker was in possession of an *unknown* quantity of narcotics, "which could be quickly and easily destroyed," and "Ker's conduct in eluding them shortly before the arrest." *Ker,* 374 U.S. at 40, 83 S.Ct. at 1633 (emphasis added). *See also People v. Gassner,* 6 Or.App. 452, 488 P.2d 822 (1971) (noting that probable cause was made out for a no-knock warrant where officers either believed there to be a small, readily disposable amount of evidence or did not know the quantity).

■ It is clear that the no-knock exception is appropriately limited to very particular circumstances of defined exigency. Such an exigency must include not only a statement that drugs reside in the house but, logically, that such drugs are in a form that would render them quickly disposable. As the Colorado Supreme Court has observed, "[c]ertainly, if the police officers are search-

ing for a grand piano, notice can fairly be required without jeopardizing police search and seizure practice." *People v. Lujan*, 174 Colo. 554, 484 P.2d 1238, 1241 (1971).

The rationale for such limitations on the no-knock exception are persuasive. One purpose of the knock and announce rule is to prevent the high potential for violence. For example, in *Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958), the Supreme Court noted that compliance with the knock and announce rule is also a safeguard for police who might be mistaken for prowlers and be shot down by fearful householders. In *People v. Dumas*, 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208 (1973), the California Supreme Court observed that

> one of the primary purposes [of the knock and announce requirement] is to prevent possible violent responses that might be aroused in a startled and fearful householder suddenly confronted with unknown persons breaking into his home for unannounced reasons ... the danger that such a confrontation will result in serious injury or death to the occupant, police officers, or innocent bystanders is obviously intensified when the householder is in possession of a firearm.

In addition to decreasing the potential for violence, the knock and announce requirement also protects the privacy of the occupants by minimizing the chance of forcible entry into the dwelling of the wrong person and prevents physical destruction of property by giving the occupants time to voluntarily admit the officers or explain that they have the wrong address. *See Ker*, 374 U.S. at 46–64, 83 S.Ct. at 1635–45 (Brennan, J., dissenting); *United States v. Ruminer*, 786 F.2d 381, 383 (10th Cir.1986). We must therefore hold police officers to a standard of sufficient particularity such that we do not, as the Tenth Circuit has cautioned, obviate the necessity for complying with the Fourth Amendment or state and federal statutes in

any search of the residence of an alleged drug dealer. *See Stewart*, 867 F.2d at 585.

Like other federal courts, we are not prepared to take judicial notice of the easy disposability of a full six pounds of marijuana that was apparently not in small packages ready for street sale or otherwise easily handled and flushed.[3] Our conclusion is buttressed by the fact the officers in this case need only have waited a short time or no time at all after a knock and announcement before breaking into the house. *See Ruminer*, 786 F.2d at 383–84. The federal courts have declined to carve from the Fourth Amendment an enormous exception permitting no-knock entries in every case in which drugs of unspecified disposability are suspected to be in an individual's residence.

## 2. The State Standard

The state courts of Colorado have not been so discriminating in their analysis, however, and it is one opinion by the Supreme Court that makes the law in this area so contradictory. In *People v. Lujan*, it was the Supreme Court that qualified no-knock entries by noting, aptly, "[c]ertainly, if the police officers are searching for a grand piano, notice can fairly be required without jeopardizing police search and seizure practice." 484 P.2d at 1241. However, since the Supreme Court's decision in 1971, police officials in Colorado have ignored the reasoning behind the Supreme Court's decision and have chosen to rely on one conflicting piece of ill-considered dictum embodied in the *Lujan* Court's exceptions to the knock and announce rule. *Lujan* allows one exception to the notice requirement whenever "such notice is likely to result in the evidence subject to seizure being easily and quickly destroyed or disposed of, *which is true in every case involving a search for narcotics*." *Id.* (emphasis added).

Notwithstanding that *not* every form of narcotics can be easily and quickly destroyed or disposed of, the Supreme Court's casual

---

3. Although clearly self-serving, Plaintiff has filed an affidavit in which Anthony F. DiVirgilio, retired police captain of Northglenn Police Department, states that in his opinion, "it would be virtually impossible, barring unforeseen, extraordinary circumstances, for six pounds of marijuana to be destroyed in the period of time that it would ordinarily take police officers to knock, announce themselves, to enter and secure the residence in question pursuant to a search warrant." Affid. of Anthony DiVirgilio, filed April 1, 1993, at 3.

explanatory clause directly conflicts with the principle behind the Court's more cogent observation that searches for some items, such as grand pianos, ought to be preceded by notice because no exception is warranted in order to preserve the evidence. One can only speculate as to why the Court in *Lujan* did not also refuse to carve exceptions for amounts or types of narcotics packaging that cannot be easily destroyed or disposed of—dozens of bricks of cocaine wrapped in plastic and duct tape, or hundreds of bags of marijuana, for example—and for which the same Fourth Amendment protections should be available for individuals as in searches for grand pianos. The Court's twenty-two-year-old dictum has had potentially disastrous and far-reaching effects.

All officers of the Colorado Springs Police Department rely on *Lujan* for their daily work. The *Lujan* knock and announce exception for narcotics is quoted at length in a section called "No–Knock Search Warrants" in one of the Department's training documents. *See* Def.Mot. for Summ.J., Exh. 6, "Colorado Springs Police Department General Order, Section 7, Force, Detention, and Arrest; Topic: Search Warrants" at 4–5 (1989). In other words, the training manual of the Colorado Springs Police Department contains language from the Supreme Court of Colorado to the effect that any search for narcotics, regardless of any particularized showing that the evidence may be destroyed, is presumptively exigent and justifies a no-knock entry. Reluctantly, we therefore cannot conclude that the law in this area is clearly established. *See also Moore*, 956 F.2d at 849–50 (noting that Nebraska's judicial notice of narcotics disposability is a minority view but could be relied upon by officers subject to Nebraska state law). Defendants Fiorillo and Shull will be granted qualified immunity.

## IV. Plaintiffs' Third Cause of Action: Municipal Liability

■■■■ Suits against governmental officials in their official capacities are actually suits against the governmental entities for which they work. *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Governmental entities cannot be held liable unless an official policy or custom caused the constitutional violation asserted in the complaint. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978).

■■■■ Defendants claim Plaintiff has failed, as she must, to allege that their constitutional violation resulted from a municipal "policy" or "custom" and their claim must therefore be dismissed. Defendants also object to the lack of specificity in Plaintiff's general allegation that the City "engaged in a pattern of deliberate indifference to the constitutional rights of safety of both occupants and police officers in the training, supervision and discipline of Colorado Springs' officers with respect to the need for, application of and execution of no-knock search warrants." Defendants assert the claim must be pleaded with greater specificity.

Plaintiff has sought to moot Defendants' first concern by amending her complaint to state that the City "was the moving force behind and caused" Plaintiff's constitutional rights to be violated. Defendants' second objection is that Plaintiff's complaint fails to meet the heightened standard of pleading this District has required for § 1983 actions alleging municipal liability. *See, e.g., Trejo v. Wattles*, 654 F.Supp. 1143 (D.Colo.1987); *Garcia v. Wyckoff*, 615 F.Supp. 217 (D.Colo. 1985). In the recent case of *Leatherman v. Tarrant County Narcotics Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected standards of pleading requiring anything more than the "short and plain statement" mandated by Fed.R.Civ.P. 8(a)(2). The Court brushed aside arguments that the standard of specificity required for claims against potentially immune officials could be equated with the standard required to negate a city's immunity from liability. The Court also pointed out that Fed.R.Civ.P. 9(b) states clearly which causes of action require particularity in pleading—fraud and mistake—and allegations of municipal liability are not among them. The Court cited with approval a Ninth Circuit case which held that "a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a

bare allegation that the individual officer's conduct conformed to official policy, custom or practice." *Karim–Panahi.v. Los Angeles Police Department*, 839 F.2d 621, 624 (9th Cir.1988).

Plaintiff's Second Amended.Complaint contains just. such a "bare allegation" that the individual officers' conduct conformed to official policy. Plaintiff states, in sum, that the City's policy or custom of encouraging no-knock searches was the moving force behind the violation of her constitutional rights. This is probably sufficient to survive a motion to dismiss. Under a motion for summary judgment, we also note Plaintiff's reference, in briefs filed with the Court, to the search warrant policy of the Colorado Springs Police.Department, which authorizes no-knock search warrants "in every case involving a search for narcotics." Chief Kramer further states in an affidavit that the Vice, Narcotics and Intelligence Unit "follows the orders, policies and procedures of the Colorado Springs Police Department." Affid. of Chief Kramer, ¶ 3. These facts sufficiently make out a claim ·to survive a motion for summary judgment.

## V. Plaintiffs' Fourth Cause of Action: False Imprisonment, Battery, Outrageous Conduct

· ▮ Plaintiff concedes Defendants' assertion that Chief Kramer, Captain Shull, Detective Fiorillo, and Officer Gibson cannot be held liable for false imprisonment or battery, and that neither Kramer nor the City cannot be held liable for any state tort claims due to their immunity under the Colorado·Governmental Immunity Act. C.R.S. §§ 24–10–101 through 24–10–120. (1988 Repl.Vol. 10A). Plaintiff briefly argue, however, that the actions of Captain Shull, Detective Fiorillo, and Officer Gibson in knowingly procuring the no-knock search warrant and causing the unlawful intrusion do make out a claim for outrageous conduct. Plaintiff cites no authority for her assertion that an illegal search constitutes outrageous conduct. Furthermore, as we have held, the defendants who applied for and executed the no-knock warrant are immune from § 1983 liability; it would make no sense nevertheless to hold them liable. for a tort based on the same facts.

## VI.

Accordingly, it is ordered that:

(1) Defendants' Motion to Dismiss or for Summary Judgment Regarding Plaintiff's First, Third, and Fourth Causes of Action, filed·February 16, 1993, is GRANTED IN PART and DENIED IN PART.

(2) Defendants Gibson, Lopez, Borini, Fiorillo, and Shull are entitled to immunity from Plaintiff's first cause of action. The claim is hereby DISMISSED.

(3) Defendants' motion to dismiss or for summary judgment on Plaintiff's third cause of action is DENIED.

(4) Defendants' motion to dismiss or for summary judgment on Plaintiff's fourth cause of action is GRANTED. The claim is hereby DISMISSED.