## ELIAS S. BARLOW AND ANOTHER *vs.* EZRA GREGORY.

The provision of the constitution of the United States against laws impairing the obligations of contracts, applies only to laws designed to operate upon some of the stipulations of contracts, and was not intended to interfere in any manner with the legislation of the states in relation to their internal police.

The allowance of days of grace upon negotiable notes being founded wholly upon custom, the custom is to be regarded as contemplating the state of things, affecting the days of grace, which may happen to exist when the note falls due.

A negotiable note was made and indorsed on the 29th day of June, 1860, payable at bank in six months; the last day of grace falling on the first day of January, 1861. By statute if the last day of grace on a negotiable note should fall on any one of certain public holidays the note was to be payable on the first secular day preceding. On the 6th day of June, 1860, the legislature passed an act making the first day of January a legal holiday under the statute, which act took effect, by a general law, on the 4th day of July following. Held, that the act operated upon the rights of the parties under the note, and that payment could be legally demanded and the note protested on the 31st day of December.

ASSUMPSIT, against the defendant as indorser of a promissory note; tried in the superior court, on the general issue closed to the court, before *Seymour, J.*

The note was made by one Chesney, to the order of the defendant, on the 29th day of June, 1860, payable in six months from date at the Bridgeport City Bank. It was on the same day indorsed by the defendant and delivered to the plaintiffs. The third day of grace on the note fell on the first day of

January, 1861. By statute (Rev. Stat., tit. 37, § 2,) " whenever any negotiable promissory note or bill of exchange shall be payable in this state, and the third day of grace on such note or bill shall fall upon a day appointed by the Governor of this state as a day of public fasting or thanksgiving, or upon the fourth day of July, or upon Christmas day, such promissory note or bill of exchange shall be due and payable on the secular day next preceding such day of fasting, thanksgiving, fourth of July, or Christmas day." The General Assembly at its May session in 1860 passed the following act : " That title 37, section 2d. of the revised statutes, be amended by inserting the words, ' or the first day of January,' after the words ' Christmas day,' wherever the same occur." This act was approved on the 6th of June, 1860, but, under the general law with regard to acts of the General Assembly, did not take effect until the 4th day of July following. The note in question was presented for payment at the Bridgeport City Bank on the 31st day of December, 1860, that being the next secular day preceding the first day of January, 1861, and was protested for non-payment and notice given to the defendant as indorser. No other demand was ever made or notice given.

The defendant contended that demand could legally have been made only on the first day of January, 1861, and that he was discharged by the neglect of the plaintiffs to have the demand made on that day, and notice of non-payment, if it had not then been paid, given to him.

The superior court rendered judgment for the plaintiffs, and the defendant moved for a new trial.

*Beardsley* and *Seeley*, in support of the motion.

It will not be disputed that the defendant is discharged from his liability as indorser, unless the act of 1860, by which the first day of January was made a legal holiday, operated upon the contract, so as to make the 31st day of December the last day of grace, instead of the first day of January, which was so when the note was made and indorsed. We contend that that act could not have that operation. 1st. The act is not retrospective in its terms or by necessary im-

plication, and the court will never construe an act to be so unless its language imperatively requires it. *Goshen* v. *Stonington*, 4 Conn., 209 ; *Perkins* v. *Perkins*, 7 id., 558 ; *Plumb* v. *Sawyer*, 21 id., 351. 2d. If a retrospective operation should be given to it, then it would be unconstitutional so far as its application to this contract is concerned, as impairing its obligation. " The ' obligation ' of a contract consists in that which a person has undertaken to perform. If he has agreed to pay a certain sum at a specified day, his contract binds him to pay *that sum* on *that day*, and this is its obligation." Hosmer, C. J., in *Smith* v. *Mead*, 3 Conn., 356 ; *Trustees of Bishop's Fund* v. *Rider*, 13 id., 87, 93 ; *Sturges* v. *Crowninshield*, 4 Wheat., 197 ; *Green* v. *Biddle*, 8 id., 84. " It is too well settled to admit of dispute that in regard to negotiable notes the days of grace make a part of the original contract. Such a note, payable by the terms of it in sixty days, is in law a note payable in sixty-three days." Bissell, J., in *Savings Bank* v. *Bates*, 8 Conn., 511. If the act could lawfully make the note payable one day sooner than the parties made it, then it could make it payable in half the time, or in one day.

*Hollister* and *Lyon*, contra.

It is not necessary to give the statute a retrospective effect. It operates on a future event, and takes away one of the days of grace that would otherwise have been allowed for the payment of the note. These days of grace are a mere indulgence, to which parties are entitled only by custom, and it is doing them no wrong and is not in any proper sense changing or impairing their contract if the legislature takes one of them away ; and the parties will be considered as having made their contract in view of the power of the legislature to do this. But here the act is not to be considered as of later date than the note. It was approved on the 6th of June, more than three weeks before the note was made. When thus approved it was complete as an enactment, and though technically it did not take effect until the fourth day of July, yet the parties will be presumed to have had knowledge of it, and to have

made their contract with that knowledge. *Curtis* v. *Barnum*, 25 Conn., 370.

SANFORD, J. This is an action against the indorser of a promissory note dated June 29th, 1860, and payable six months after its date. The note was presented for payment on the 31st of December, was dishonored, and the indorser was notified the same day. The only question now made is, whether the note was presented at the proper time.

By statute (Rev. Stat., tit. 37, sec. 2,) it is provided that " whenever any negotiable note or bill of exchange shall be payable in this state, and the third day of grace on such note or bill shall fall upon a day appointed by the Governor of this state as a day of public fasting, or thanksgiving, or upon the fourth day of July, or upon Christmas day, such promissory note or bill of exchange shall be due and payable on the secular day next preceding such day of fasting, thanksgiving, fourth of July or Christmas day ; " and by an act passed at the May session of the General Assembly of the year 1860, and approved on the 6th day of June, the first day of January was, by way of amendment to the above recited act, added to the other holidays therein enumerated ; but the time when the amendment should go into operation not being specified in the act itself, it took effect on the fourth of July, 1860, under the general statute upon that subject.

Within the terms of the act of 1860, therefore, the note was presented at the proper time. But the defendant contends that in regard to these parties that act was inoperative, because it took effect after the indorsement was made ; and if construed so as to affect this contract, would impair its obligation, and be repugnant to the tenth section of the first article of the Constitution of the United States.

We think this claim unfounded. We suppose the constitutional prohibition applies only to laws aimed at contracts and intended to operate upon some of the stipulations which such contracts contain, and we may safely affirm that it was not the intention of the framers of the constitution to interfere in

any manner with the legislation of the states in relation to their internal police.

It certainly was not the design of our legislators by the act of 1860 to curtail the term of credit *agreed upon* between creditors and their debtors, or in any other way to affect existing contracts, or the obligations which such contracts impose. Their object obviously was to promote the public health, public morals, or public welfare in some other respect, by enabling a portion of our people for a season to shake off the cares of business and devote another day to recreation and the cultivation of the social affections. With the wisdom or expediency of the enactment we have nothing to do. Our inquiry regards only the constitutional authority of the legislature to adopt it. We are satisfied that it possessed that power. The statute in question is of the character of a police regulation, and for that reason, if for no other, is beyond the purview of the constitutional prohibition.

A contract to perform labor or deliver goods on a day appointed by the Governor for public fasting and prayer, as the law now stands, would be a valid contract. But suppose that after such a contract made and before the time appointed for its performance, the state legislature, deeming it expedient to return again to the good old ways of our ancestors, should by law prohibit the performance of all servile labor on days appointed for public fasting, would such a law be repugnant to the constitution? We think it would not, although it would incidentally postpone for a single day the performance of the supposed contract.

Again, this law was not intended to impair the obligation of any contract, nor does it in fact operate upon any of the stipulations which these parties have made. A contract is an agreement between two or more persons to do or not to do a particular thing ; and the *obligation* of a contract is found in the terms in which that contract is expressed, and is the duty thus assumed by the contracting parties respectively to perform the stipulations of such contract. When that duty is recognized and enforced by the municipal law, it is one of *perfect*, and when not so recognized and enforced, of *imperfect* obliga-

tion.   The indorser of a note agrees with  the indorsee to be
responsible for the maker's performance of his promise ; so
that, in order to learn what the contract of the indorser is, we
must first ascertain the contract of  the maker.   In the case
before us the  maker agreed with  the payee to pay the note
six months after its  date.   And the payee agreed to give the
maker credit for  that period.   The *contract* of the original
parties  then was for six months and  only six months credit.
The payee then became indorser and transferred his rights and
obligations  to the  indorsee, and  also  undertook  that the
maker should  perform his promise, and if  he failed, that the
indorser upon due  notice of such failure would  pay the note
himself.   Now, had the  statute in  question  provided that
notes which by their  terms were payable on the first of  Jan-
uary should be due and payable on the last day of December,
the rights of the maker under the contract, and  consequently
of the indorser, would have been injuriously affected, and the
obligation of the payee's contract would  have  been impaired,
because that entitled  the maker to six months' credit, which
the act curtailed.   But the act now under consideration cuts
off merely one of the days of grace, leaving the term of credit
for which the parties *stipulated in their contract* to remain
intact.   I know that days of grace are sometimes said to make
a part of the original contract; as by Bissell, J., in *Savings
Bank* v. *Bates*, 8 Conn., 511 ; but the expression is not
strictly accurate.   The original contract is found in the terms
which· the parties have agreed upon and  adopted as the expo-
nents of their intentions, and no where else ; and the words
" six  months " no more signify six  months and  three days
when employed in a negotiable note or bill of exchange, than
when used in any other  instrument.   The custom  of  mer-
chants in  relation to such notes and bills  indeed, is to allow
to the makers of  the one, and  the acceptors of  the other, a
longer time to make their payments in than is allowed to other
debtors.   And this custom  having become general and uni-
form in its observance, is now recognized by the courts as part
of the  mercantile law by which they are governed.   In the
language of the court in *Tassell* v. *Lewis*, 1 Ld.  Raymond,

743, " the custom is that three days are allowed *for the payment of* bills and notes." Days of grace no more make part of the original contract now, than they did when their allowance was optional with the holder of the paper, or when the existence of the custom had to be proved by witnesses. They are still days of respite or indulgence, demandable indeed and allowed in every case under the custom as an incident to the contract, but in regard to which the contracting parties have in fact made no stipulation.

In some districts a tenant for years is by custom entitled to take an away-going crop after the expiration of his term, though his lease is silent on the subject. We have never heard that right spoken of as making part of the original contract. The custom to allow days of grace operates in relation to the rights, duties and liabilities of the holders and indorsers of negotiable paper, as our local law does in regard to the rights and duties of the assignee of a note not negotiable and the liability of the indorser of such a note upon his blank indorsement; that is, in the latter case the general law prescribes the measures which the assignee must pursue in order to fix the indorser with liability for the debt, and in the former the custom prescribes those measures. No contract in regard to them is made in either case.

In the making of this contract the parties probably contemplated the existence of the custom, and made the note with reference to it; but they could have made no calculation in regard to the length of the indulgence to which the maker would be entitled, because it depended upon contingencies beyond their control. They could have ascertained that the third day of grace would fall upon the first day of January, and that that day would not be Sunday; but they could not have ascertained whether the first of January when it came would be a business day or a holiday. It might be made a holiday by the proclamation of the Governor designating it as a day of public fasting or thanksgiving, and perhaps also by a like proclamation of the President. Whether it would be so designated or not these parties could not have ascertained;

and it is fair therefore to presume that they intended to make no contract in regard to it.

In general the custom allows three days of grace, but if the last of them falls upon a holiday, then but two ; if the two last, but one ; and if all three, none at all ; (Story on Bills, § 340,) and, looking forward to the time specified for the payment of the paper, it requires the parties to respect not only all such general holidays as shall then exist, regardless of their origin, but also to respect the settled usages of religious denominations whose peculiar tenets forbid the transaction of secular business by their members on other days. Story on Bills, § 340. *Lindo* v. *Unsworth*, 2 Camp., 602. *Cuyler* v. *Stevens*, 4 Wend., 566. *Tassell* v. *Lewis*, 1 Ld. Raym., 743.

In short we suppose the *custom* is to regard such holidays as shall happen to be established when the note or bill falls due, and to present the paper and demand its payment, not on the day specified therein, but on the last one of the next three days thereafter which shall happen to be a business day. If therefore the days of grace are regarded as part of the term of credit agreed upon and covered by the contract, still there is no collision between the statute and the contract thus construed by the custom, and the obligation of the contract is not impaired by the operation of the statute.

A new trial should be denied.

In this opinion the other judges concurred.