[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff alleges that he was a subcontractor for the developer of a project called the Whitney Grove Square Townhouses. The defendants Stanley M. Bergman and Rhoda Cohn are Trustees of a revocable trust and purchased three residential units and four garage units at the Whitney Grove condominium complex. An individual named Stuart Cohn is a beneficiary of the trust. The action arises from the plaintiff's provision of labor and materials for the property owned by the trust. The plaintiff has not been paid for labor and material he provided for the Cohn townhouse. When the Cohn town house was purchased it required substantial additional work.
Since it didn't get paid for work it performed and material it supplied the plaintiff has brought this suit against Stuart Cohn and the trustees of the revocable trust Stanley M. Bergman and Rhoda Cohn.
The two trustee defendants have filed this motion for summary judgment They claim there is no genuine issue of material fact because there is no basis for the allegations set forth in the CT Page 2879 counts of the complaint applicable to them. The trustees have been sued on an express contract theory and on a theory of quantum meruit.
The rules on determining whether a motion for summary judgment should be granted are well-known. A trial court is to determine whether an issue of fact exists but cannot try that issue if it does exist, McColl v. Pataky, 160 Conn. 457, 459 (1971). The party moving for summary judgment must show there is the absence of any genuine issue as to all material facts. On the other hand mere assertions that a material facts exists are insufficient to establish the existence of such a fact, Connecticut v. Goggin,208 Conn. 606, 616 (1988), Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 579 (1990).
(1)
The plaintiff makes a claim against the defendants on an express contract theory. In paragraph 10 of the Second Count it is alleged that the "Cohn Trust" is in breach of contract causing the plaintiff damages. In the section of the complaint entitled "Facts Common" to all counts two contracts are referred to in paragraphs 5 and 6.
In paragraph 5 it alleges when the trust purchased its units as part of its purchase price the trust and the seller negotiated certain credits to the purchase price relating to work that remained to be done on the units "to be performed by subcontractors including Enterprise" (the plaintiff). The trust and Stuart Cohn were to make payments directly to Enterprise and the credits were to be deducted from the purchase price and from the general contractor's contract with the developer But it would appear that the operative contract on which suit is based is referred to in paragraph 6. This contract is attached to the complaint and is in effect a letter agreement between the plaintiff and Stuart Cohn to perform the work for which the plaintiff now sues. The paragraph refers to this letter of September 29, 1987 as a "proposal" which was accepted by Cohn" by entering his individual signature thereupon."
It is difficult to understand the relationship between the purported contract claim in paragraph 5 and the contract claim asserted in paragraph 6 but in any event these are the only express contract claims referred to in the complaint. CT Page 2880
It has been said that: "A contract is an agreement between two or more persons to do or not to do a particular thing; and the obligation of a contract is found in the terms in which that contract is expressed and is the duty thus assumed by the contracting parties respectively to perform the stipulations of such contract," Barlow v. Gregory, 31 Conn. 261, 265 (1863). InContracts 3 ed Calamari Perillo it is said at § 2-1, p. 25: "Usually an essential prerequisite to the formation of a contract is an agreement: a mutual manifestation of assent to the same terms. This mutual assent ordinarily is established by a process of offer and acceptance.
(a)
Can the proposal signed by Stuart Cohn referred to in paragraph 6 form the basis of an action in contract against the trustees of this trust? First it should be said that the complaint explicitly appears to base its contract action on this contract It is attached by the plaintiff to its complaint. That is sufficient "documentation" to raise the claim advanced in the motion for summary judgment. Section 381 of the Practice Book doesn't require the moving party to file an affidavit. What possible affidavit could the defendants file here to raise or further evaluate their defense that on the face of it this Stuart Cohn contract doesn't bind them. Insofar as the plaintiff refers to and attaches the proposal to its complaint it's a judicial admission that this is one of its grounds for asserting its contract claim. The court should certainly be allowed to examine the document to see if it, on its face and without more, can establish a contract claim against the two parties moving for summary judgment.[1] Stuart Cohn signed this proposal as an individual and nothing in the document or anything about the manner in which he signed it provides room for conjecture let alone evidence that Stanley Bergman and/or Rhoda Cohn as a result of this document and its execution assented to its terms or agreed to assume contractural obligations. Rudimentary principles of contract interpretation indicate that if this proposal is a contract, it is one between Stuart Cohn and the plaintiff only.
On the basis of this document the only arguable manner in which a contract claim could be advanced against the defendants Bergman and Rhoda Cohn is if the plaintiff alleged Stuart Cohn signed it as their agent or as an apparent agent of these two people. Such a theory is not alluded to in the complaint but assuming it can be properly considered the issue can be determined CT Page 2881 on the basis of what has been submitted to the court. At this point the burden of explanation should shift to the plaintiff to indicate on what basis it claims Stuart Cohn acted as agent or apparent agent for these defendants. Clearly the burden is on the moving party to show the absence of any material fact. But where the grounds on which a claim is made do not support that claim and the defendant would otherwise be entitled to summary judgment a plaintiff should not be able to avoid that result by claiming a defendant is required to rebut a negative and submit affidavits countering all the possible ways the plaintiff's case can't survive the demise of its original claim. Burden of explanation shouldn't be confused with burden of proof. The plaintiff should at this a point at least provide some evidence through affidavits, depositions, or documents to explain why its claim is still viable. Then in that context, the burden of proof would obviously be upon the defendant to show as to the new claim or the new variation of the old claim no genuine issue of material fact exists which would preclude the granting of summary judgment. But if the plaintiff fails to provide material to rebut a claim that based on what is presented summary judgment should lie against it, then it runs the risk in fact of having judgment rendered against it.
Nothing submitted by the plaintiff indicates that Stuart Cohn acted as the agent of these defendants. Which is no surprise considering he was the beneficiary of the trust and the trust was in part set up or at least operated in such a way as to monitor his expenditures (see pp. 29-31 of Betsy Henley-Cohn transcript.)
In fact the plaintiff's submissions indicate the plaintiff understood Stuart Cohn to be acting for himself as the owner of the townhouse units and as the person interested in completing the interior work, see Ex. A, letter of July 2, 1987, Ex. B memo, Ex C. Also see ex. D and E. All of this of course is underlined by the fact that the proposal signed by Stuart Cohn upon which the contract claim is based is signed by Stuart Cohn in an individual not a representative capacity and he signed this September 29, 1987 proposal right under the signature of the plaintiff's vice president. As the plaintiff concedes neither of the defendants were directly involved in the construction of the townhouse. The plaintiff in his deposition says that he never dealt with the two defendant trustees.
The parties agree that agency requires basically three elements (1) the manifestation by the principal that the agent act for it (2) acceptance by the agent (3) an understanding that the CT Page 2882 principal is in control. The defendants' architect Richard Weiss and Stuart Cohn negotiated contracts for the construction completion with subcontractors including the plaintiff. The plaintiff speculates in his brief that "there is no plausible explanation for this arrangement other than the fact that Stuart and/or Weiss had the authority to bind the trust, the true owner of the Cohn Townhouse, to the obligations necessary to complete the work", (plaintiff's brief, page 6). But no evidentiary basis is presented for this speculation. Betsy Henley-Cohn managed the trust and in her deposition she indicated any dealings she had were with the general contractor not subcontractors and Stuart Cohn had no authority to incur large expenses for work on the townhouse or apparently anything else. In fact given Mrs. Henley-Cohn's explanation of the nature of the trust she and the defendants would have probably violated their trust responsibilities if Stuart Cohn were allowed to bind the trust at his own discretion.
It is true, as the plaintiff notes that the issue of agency or implied agency are generally questions of fact, Wykowski v. Presti,7 Conn. App. 188, 189 (1986), Botticello v. Stefanovicz, 177 Conn. 22,25 but nothing in agency theory precludes resort to summary judgment practice when a particular case don't raise any genuine issue of fact to support an agency theory.
The plaintiff also relies on an apparent authority theory. Under this theory the defendant trustees would be bound by the act of Stuart Cohn in signing the September 29, 1987 proposal. The Restatement (Second) Agency at § 27 states:
 " . . . apparent authority to do an act is created as to a third person (here the plaintiff) by written or spoken words or any other conduct of the principal (here the defendant trustees) which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his (sic) behalf by the person purporting to act for him (sic)."
The doctrine is recognized in Connecticut and is said to have two elements (1) the principal held the agent out as possessing sufficient authority to embrace the act in question or knowingly permitted the agent to act as having such authority and (2) the party seeking to bind the principal must have acted in good faith reliance on that appearance of authority. The courts have; CT Page 2883 developed the doctrine to protect, under appropriate circumstances, a third person in dealing with an agent lacking express authority,Nowak v. Capitol Motors, Inc., 158 Conn. 65, 69 (1989), Keeler v.General Products, Inc., 137 Conn. 247, 251 (1950).
There has been nothing presented to the court by way of affidavits, depositions, or documents to indicate the trust or any of its representatives let alone the named defendants in any way did anything to lead this plaintiff or anyone else to conclude Stuart Cohn or Richard Weiss or both of them together were acting as agents of the trust or of these two defendants in behalf of the trust. In fact the material submitted by the plaintiff contradict any such claim. The plaintiff dealt with Stuart Cohn as the "owner" of the townhouse. It is not clear from anything submitted that the plaintiff was even aware of the trust or the status of the defendants as trustees so it is difficult to see how it can now be claimed by the plaintiff that it relied on anything regarding Stuart Cohn's authority to act or lack thereof.
(b)
In paragraph 5 of the complaint the plaintiff refers to an agreement entered into between the seller of the townhouse and the trust called "Modification to Agreement". It is difficult to understand in what way the plaintiff relies on this document to advance a contract cause of action against these defendants.
Basically the agreement notes that the buyer is purchasing the unit as is. The unit was bought despite the fact that much interior work had to be done, thus the agreement reflected the fact at the time of closing a certificate of occupancy or architect's certificate of completion would not be delivered. No doubt these factors were reflected in the purchase price but there is absolutely nothing in this document or in any other material presented by the plaintiff to indicate that any agreement by the seller of the townhouse and the trust who purchased it would impose obligations on the trust or its representatives to purported third party beneficiaries. There is nothing to indicate that the trust assumed any obligation to pay subcontractors for completing interior work as part of an arrangement to secure credits against the purchase price. Where is the consideration for this? What possible motive would contracting parties have for involving themselves in such an arrangement. The only obligation the trustees assumed was to make payments to the seller-developer. CT Page 2884
(2)
The plaintiff also advances a quantum meruit theory against the defendants. In Burns v. Koellmer, 11 Conn. App. 375, 383
(1987) the court says: "Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties and that, therefore, the plaintiff is entitled to the reasonable value of the services rendered . . . such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered." As the court goes on to say the party against whom this theory is advanced must knowingly accept the services and represent to the claimant that it will be compensated for them in the future. Id., p. 384.
The previous discussion of the facts here indicate there has not been an iota of evidence that in performing this work the plaintiff relied on any representations of these defendants, the trust or any other individual it knew or had reason to know were representatives of the trust.
As Burns notes in addition to the doctrine of quantum meruit there is a separate doctrine of unjust enrichment, "Conn. App. at pp. 383-384. Generously read the complaint could be held to allege an unjust enrichment claim. Unjust enrichment applies when there are no legal remedies pursuant to contract, the defendant must be shown to have benefited, the benefit was unjust because it wasn't paid for by the defendant and the failure to pay operated to the defendant's detriment, A C Corporation v. Pernaselci, 2 Conn. App. 264,265 (1984), Monarch Accounting Supplies, Inc. v.Prezioso, 170 Conn. 659, 665 (1976). This somewhat elusive doctrine is probably inappropriate when there is also an implied contract or quantum meruit claim and the explanation in Burns distinguishing unjust enrichment and quantum meruit is for me at least hard to follow given the facts of that case.
Suffice it to say that some general notion of unjust enrichment shouldn't be allowed to serve as a vehicle to subvert ordinary contract law. The mere fact that a third party benefits from a contract between two other parties doesn't make that party responsible in quasi contract or unjust enrichment. There is a general principle of law cited by the defendants and set forth in 17 A C.J.S. Contracts § 370(2):
". . . in the absence of an express contract CT Page 2885 making the owner liable, the compensation of persons who perform labor for, or furnish materials to the builder is generally to be paid by such builder, and not by the owner, although the work is done under the direction of, and in accordance with plans furnished by, the owners' engineer; and sub-contractors and materialmen must resort for payment to the builder or contractor since in the absence of an express contract there is no privity between a subcontractor employed by a general building contractor and the owner, and the liability of the owner is only to the general contractor who is liable to the subcontractor."
In a specialized industry like the building industry general equitable doctrines must be tempered by the requirements of that industry and long term understandings held by people working in that industry. If a subcontractor could bring suit willy nilly against an owner or developer who had engaged a general contractor and had thereby assumed the general contractor was responsible for the overall job including the hiring of subs, chaotic results would occur. It is true that a rigid enforcement of the Corpus Juris rule can lead to unfair results. Here, for example, the subcontractor plaintiff delivered services after signing an agreement with a party who in all likelihood cannot pay for those services. Moreover the work done benefits the true owner of the property. But the whole purpose of this trust was to monitor the expenditures of the beneficiary — such trust arrangements would provide very weak protection if the trustees could without more be liable for unauthorized and perhaps extravagant expenditures incurred by beneficiaries without the encouragement or even knowledge of the trustees. In fact the law has provided protection for subcontractors in these situations who might otherwise be taken advantage of by unscrupulous or financially insolvent general contractors or by the unusual circumstances presented here — it is the mechanic's lien. Not having taken advantage of this remedy the plaintiff should not be permitted to rely on broad equity doctrines ill suited to the industry it works in.
The motion for summary judgment is granted.
Thomas Corradino, Judge